GEORGE H. WALKER, Complainant, Appellee,

*vs.*

CLARK SHEPARDSON, Defendant, Appellant.

APPEAL IN EQUITY FROM RACINE CIRCUIT COURT.

Riparian owners who are bounded upon a stream of water above the ebb and flow of the tide, own to the thread of the stream, but subject to any easement which the public may have therein.

Riparian owners have the right to use their land which is covered by the water of the river, in any way compatible with the use of the stream for the purposes of navigation.

One riparian owner cannot, by artificial means, enlarge his own conveniences as such, and thereupon demand an abridgment of the rights of another riparian owner.

THE bill in this case was originally filed in the Circuit Court of Milwaukee county, the object and prayer of which was to procure a perpetual injunction, restraining the defendant from driving piles and erecting a wharf which, it was alleged would obstruct the navigation of Milwaukee River at that place. Afterwards the venue of the cause was changed to Racine county, testimony taken, a hearing had, and a decree passed.

In order to properly appreciate the case, it is necessary to publish the stating part of the bill, the answer and proofs, somewhat at length.

The bill states that your orator, George H. Walker, is now, and has been, for more than six years last past, the owner, in fee simple, and in possession of certain real estate, known as water lots, situated in Milwaukee, and described on the map of said city, as lots numbered from two to eleven inclusive, in block numbered three on Walker's Point, in the fifth ward of the city of Milwaukee.

And that said lots are bounded on the north and east towards, and lie adjacent to Milwaukee River, which said river, from its mouth up to, and for a great distance above the said lots of your orator, has always been, and still is, a common and public highway, navigable for sail and steam vessels of the class usually

employed in the trade, commerce and navigation of the lakes and rivers into which the waters of said river flow. And your orator further saith, that on or about the year eighteen hundred and forty-eight, your orator built and constructed a dock or wharf, at an expense of several thousand dollars, along the line between said lots and river, and caused the bed and channel of said river, in front of and adjacent to said lots, to be dredged and cleaned out, and made of sufficient depth to render said dock freely and conveniently accessible to all vessels, propellers, steamers, and other craft of the largest class employed in the navigation of said river.

And your orator claims, that he was and is entitled to the free and undisturbed use and enjoyment of the channel of said Milwaukee River, for the ingress and egress of vessels and commerce, to and from said dock and wharf, and to have said channel, and every part thereof, kept entirely free and clear of all artificial creations and obstructions therein, that shall or may in any wise unlawfully interfere with, hinder, interrupt, or prevent such free and undisturbed use and enjoyment thereof for the purposes aforesaid.

And your orator further showeth, that on the fifth day of May, eighteen hundred and fifty-three, the mayor and common council of the city of Milwaukee aforesaid, being thereunto authorized by law, passed, and immediately thereafter published, an ordinance entitled "An ordinance to establish a dock line on the west side of Milwaukee River," by the first section of which ordinance the said mayor and common council did ordain as follows, to wit:

"That the dock line on the west side of the Milwaukee River, between the line dividing the fourth and fifth wards, and the northeast corner of block one hundred and fifty-eight, in the fourth ward, shall be and hereby is established as follows:

"Commencing at the northeast corner of block one hundred and fifty-eight (158), in the fourth ward, at a point one hundred and forty-two feet east from Reed street, and running parallel with said street to the line dividing the fourth and fifth wards, to a point the same distance from said Reed street."

And your orator further states, that said dock line as established by the said mayor and common council, extends from the

north extremity of the dock of your orator, constructed as aforesaid, to wit: from a point in the line dividing the fourth and fifth wards, on a direct line with your orator's said dock, to a point at or near the junction of the waters of the said Milwaukee River with the waters of the Menomonee River, a tributary to the said Milwaukee River, a distance of about two hundred feet; and that said line now here touches the bank of the said Milwaukee River above low-water mark.

And your orator further saith, that Clark Shepardson, and divers other persons, to your orator unknown, but who, when discovered, your orator prays may be made parties defendant in this your orator's bill of complaint, with proper words to charge them in the premises, utterly disregarding the right of your orator, and of all other the citizens of the state of Wisconsin, to the free und uninterrupted use and enjoyment of the said Milwaukee River as a common and public highway, for the purposes of navigation as aforesaid, and in defiance of said ordinance of the said city of Milwaukee in that behalf made and established, are, and have been for the space of more than three weeks last past, engaged and employed in wrongfully and unlawfully blocking up and obstructing the channel of said Milwaukee River, in front of said lots two, three, four and five of your orator, and also in front of said block one hundred and fifty-eight. in the fourth ward of said city, by driving timber or piles into the bed of said river, and by filling up and stopping said river with logs, timbers, spars, earth, gravel and other materials, thereby hindering and obstructing the flow of the waters of said river in their natural and wonted course, whereby the channel of said river is greatly straitened and obstructed, and its capacity for the passage of vessels engaged in the navigation thereof is diminished and injured, and a large portion of the channel aforesaid is rendered wholly impassable and useless for the public.

And your orator further saith, that said defendant purposes and intends by the means aforesaid, to build and construct a wharf or dock, in and upon the channel and waters of the said Milwaukee River, in front of said lots last mentioned, of your orator, and of said block one hundred and fifty-eight, and with that purpose and intent he has already wrongfully driven, or caused to be driven, a large number of piles, to wit: more than

.one hundred, into the bed and soil of said river, extending into the channel of said river, more than fifty feet beyond the said dock line, so established as aforesaid, and below the low-water mark or line of said river adjacent to said block, and by means of such piles so driven, have inclosed and taken possession of, and appropriated to his own exclusive use, for the purpose of the construction of a dock or wharf as aforesaid, a considerable portion of the bed and navigable channel of said Milwaukee River, extending and being outside of and beyond said dock line established as aforesaid, and the line of the aforesaid dock or wharf of your orator, and also beyond the low-water mark of the said river, of great extent, to wit: of about sixty feet in length across said river, and one hundred feet in width.   That the channel of said 'river is thereby confined and straitened, to the serious hindrance and detriment of the public use and enjoyment thereof, and particularly to the injury of your orator's said dock and lots, and that said wharf or dock being so constructed by said defendant as aforesaid, is wholly unlawful, and in violation of public right, and that the same is a common and public nuisance.   And your orator further saith, that the said constructions and erections so made, and proposed and intended to be made by said defendant in said Milwaukee River, as aforesaid, greatly interfere with, hinder and obstruct the use and enjoyment of the said dock and lots of your orator, and your orator saith that if the said defendant is permitted and allowed to complete and maintain the same in the manner proposed, said dock and wharf, and said lots of your orator, will be rendered difficult of access from the said river, the ingress and egress of vessels, steamers, and other craft navigating said river, to and from the same, will be seriously hindered and obstructed thereby; that the projection of the said obstruction, so by the defendant placed and being placed in said river, beyond the legally established dock line thereof, upon which your orator's said dock is constructed, and in front of said lots of your orator, will greatly interrupt, embarrass, cut off, hinder and prevent communication between said dock and lots of your orator and the main channel of said river; and that said dock and lots will thereby sustain great and irreparable injury and damage in the premises, by the diminished use and convenience thereof for the purposes

for which said dock was built and constructed, and by the reduction and depreciation of the value of said dock and lots, for which said injury, depreciation and damage your orator would have no adequate or sufficient remedy at law.

And your orator further saith, that he verily believes that the said proposed dock of the said defendant, so being built as aforesaid, will, if completed, confine the main current of the waters of the Milwaukee River, and divert the same from the vicinity of the dock and lots of your orator, where the same would naturally flow if unobstructed, and will create eddies and counter currents, setting back upon that portion of said river immediately adjacent to and fronting on said lots of your orator, and will thereby cause that portion of said river to be filled up and obstructed by deposits of sand and other materials, borne and conveyed in and by the waters of said river, to the great and irreparable injury and prejudice of said dock and lots of your orator.

And your orator further saith, that said defendant, though often requested to desist from the construction of said dock in manner aforesaid, has utterly disregarded such requests; on the contrary thereof, he has hitherto persisted and continued, and does still persist and continue, in the prosecution of his unlawful purpose and intentions in the obstruction of said river in the manner aforesaid; and that he is now actually engaged by himself, his agents, servants and abettors, in the further prosecution thereof, and your orator greatly fears, that unless they are immediately arrested and enjoined from all further proceedings in the premises by this court, they will complete the aforesaid obstruction or nuisance in the manner aforesaid, and will fill up the channel of said river in front of said block one hundred and fifty-eight, and of said dock and lots of your orator, to the extent aforesaid, with stone, earth, gravel, timber and other materials, and thereby create a permanent and substantial obstruction to the navigation thereof, which cannot be removed without great difficulty and delay and enormous expense, and that your orator will thereby be subjected to great and irreparable loss and damage, before he can obtain any remedy or relief by the ordinary process of this court, and for which the courts of law afford no adequate remedy or redress.

To the end, therefore, that the said defendant, Clark Shep-

ardson, and his confederates, may respectively, full, true, direct, and perfect answers make, upon their respective, corporeal oaths, according to the best of their respective knowledge, information and belief, to all and singular the matters and charges aforesaid, and that as fully and particularly in every respect, as if the same were here again repeated, and they thereunto particularly interrogated.

And that the said defendant, Clark Shepardson, his counselors, attorneys, agents, servants and abettors, may be restrained by an injunction, issuing out of and under the seal of this court, from putting, placing or driving, or causing or permitting to be put, placed or driven, or from permitting to be and remain, any timbers, piles, earth, stones, gravel or other materials in or upon the bed and channel of the Milwaukee River, in front of or adjacent to block one hundred and fifty-eight, in the 4th ward of the city of Milwaukee, outside of or beyond the dock line established by ordinance by the mayor and common council of said city, passed May 5th, A. D. 1853, entitled "An ordinance to establish a dock line on the west side of Milwaukee River," or from using or in any wise interfering with said river, and the bed and channel thereof, so as in any manner to hinder, prevent, disturb or obstruct, or unnecessarily interrupt the free use and enjoyment thereof, within the limits aforesaid, as a common and public highway for the purpose of navigation, and particularly so as in any wise to divert or interfere with the waters of said river flowing to and along lots two, three, four, five, eight, nine, ten and eleven, in block three in Walker's Point, in the 5th ward of said city, or so as to obstruct, hinder or prevent in any manner, the ingress or egress of vessels and steamers to and from the dock along and in front of said lots, and that said Shepardson, his counselors and attorneys may be required and compelled by the order and decree of this court, to abate and remove all obstructions and hindrances to the navigation of said river, within the aforesaid limits, of whatever nature, which they, said defendants, or either of them have fixed, placed, or driven into or upon the bed and channel of said river, and to make said river in all respects as free and clear for the purpose of navigation in front of said block one hundred and fifty-eight, as the same was immediately prior to the placing, fixing or

driving of said obstructions into the bed and channel thereof as aforesaid.

And that your orator may have such further relief, or may have such other relief as the nature of this case shall require, and as shall be agreeable to equity, may it please this honorable court to grant unto your orator, the writ of injunction issuing out of and under the seal of this court, directed to the sheriff of Milwaukee county, requiring him to serve the same upon the defendant, and commanding the said Clark Shepardson, his counselors, attorneys, agents, servants, confederates, abettors, and each of them, absolutely to desist and refrain from putting, placing or driving, or causing, or permitting to be put, placed or driven, or from permitting to be and remain, any timbers, piles, earth, stones, gravel or other materials in or upon the bed and channel of the Milwaukee River, in front of or adjacent to block one hundred and fifty-eight in the fourth ward of the city of Milwaukee, outside of or beyond the dock line, established by ordinance by the mayor and ·common council of said city, passed May 5th, A. D. 1853, entitled an ordinance to establish a dock line on the west side of Milwaukee River, and from using or any wise interfering with said river, and the bed or channel thereof, so as in any wise to hinder, prevent, disturb, obstruct, or necessarily interrupt the free use and enjoyment thereof within the limits aforesaid, as a common and public highway, for the purposes of navigation and commerce outside of and to the eastward of the dock line so established. Prayer for process, &c.

The bill was afterwards amended by adding the following:

" And your orator further saith, that on or about the year eighteen hundred and forty-eight, your orator built and constructed a dock or wharf at an expense of several thousand dollars along the line between his said lots and the said river, to wit: along and upon the line of said river in front of said lots as meandered and plotted in said year eighteen hundred and forty-eight, by or under the direction of the surveyor-general of the United States, in the states of Iowa and Wisconsin, as by the original plot of said meandered line on record in the office of the surveyor-general, at Dubuque, Iowa, or a certified copy thereof in the office of the register of the land office for the United States,

at Milwaukee, reference being thereto had for greater certainty, will more fully appear.

" And that your orator caused the bed and channel of said river in front of and adjacent to said lots of your orator, to be dredged and cleaned out, and made of sufficient depth to render said dock freely and conveniently accessible to all vessels, propellers, steamers or other craft of the class employed in the navigation of said river.

" And your orator further saith, that his said wharf or dock along said river in front of his said lots, lies wholly and throughout the entire extent thereof, on, along and upon said meandered line of said river; officially surveyed, laid down and established as aforesaid, by the legal authorities of the United States. And that your orator built his said dock in the place aforesaid, lawfully, and by authority of the common council of the city of Milwaukee, declaring and establishing the said dock line, at the place aforesaid, as he rightfully might do."

The defendant in his answer, denied that the lots mentioned in the complainant's bill were bounded on the north and east by and lie adjacent to the Milwaukee River, but, on the contrary, lots six, seven and eight do not come within fifty feet of said dock, and lot five only touches the said dock at the extreme corner of said lot, but admits that the other six lots are bounded and situated as described in said bill, and also that said river, from its mouth up to, and for a great distance above said lots, has always been and still is a common and public highway, navigable for sail and steam vessels of the class usually employed in the trade, commerce and navigation of the lake into which the waters of the said river flow.

And this defendant further answering, says that he admits it to be true as stated in said bill, that on or about the year 1848, the said complainant built and constructed a dock or wharf at an expense of several thousand dollars along the line but near said lots two, three, four, nine, ten and eleven, and the river, and caused the bed and channel of said river in front of and adjacent to said last-mentioned lots, to be dredged and cleaned out, but, he denies as stated in said bill, that the bed and channel of said river in front and adjacent to said lots, was by such dredging and cleaning out, or is now or ever has been of suf-

ficent extent to render said dock freely and conveniently acces-sible to all vessels, propellers, steamers, and other craft of the largest class employed in the navigation of said river. And in reference thereto this defendant says that it is true that about the time the said dock was so constructed by the said complain-ant as alleged, he did, for the double purpose of obtaining the mud, sand and earth, wherewith to fill up said lots, and reclaim them from the marshy state they were in by nature, and to make the water in front of and next adjacent to said dock, of suffi-cient depth for navigation at said place, and which never had been nor would be so by nature; he caused the said dredging to be done to a depth probably sufficient for that purpose (to what depth in particular this defendant has no knowledge nor infor-mation except what is stated in said bill and noted on the map, made part of this answer), but to a limited extent only directly adjoining said dock.

And this defendant further answering, says that he has no further or other knowledge or information concerning the ordi-nance of the mayor and common council of the city of Mil-waukee, establishing a dock line in front of block 158, the lots owned by this defendant, than what is stated in complainant's bill, except that just about the time when the said ordinance is alleged to have been passed, he was informed (which informa-tion he verily believes to be true) that the said complainant (who owns no lots on the river north of the section line, the southern boundary of the 4th ward) had drawn up and was circulating a petition among the real estate owners in the fourth ward of said city, to establish a, or the (this defendant cannot say positively which) dock line at the place aforesaid—that the said petition was signed (as this defendant has been informed and believes) at the sole request and solicitation of said com-plainant, who at the same time was mayor of the city; that the said complainant at the time well knew that this defendant was and had been for years, or claimed to be, the owner of lots one, two, three and four in block number one hundred and fifty-eight, in the said fourth ward, in the said city of Milwaukee, and that he had built and was the owner and in possession of a large warehouse costing six thousand dollars and upwards, then and for several years previous thereon standing, besides the expense

of filling in and docking said lots, and dredging out the Meno-
monee River; that the said petition was never presented to the
defendant for his signature, nor his approbation solicited, nor
any notice of said petition given to this defendant by said com-
plainant, nor by said common council, or any alderman thereof;
that the said dock line for the whole length thereof, is at least
one hundred feet west, and back from the navigable bed and
channel of said river, and therefore to that extent the private,
individual and exclusive property of this defendant, the whole
length of his said lots adjacent to and bounded on said river;
that the said dock line if established as aforesaid, was so estab-
lished against the consent of the defendant, the owner of said
last-mentioned lots, and the necessity thereof was not first es-
tablished by the verdict of a jury, as required by section two, of
article eleven of the constitution of the state of Wisconsin, nor
any compensation awarded to this defendant, and the said ordi-
nance is therefore unconstitutional, unnecessary, unjust, and null
and void.

And this defendant further answering, says in reference to the
allegations in said bill, that the said dock line nowhere touches
the banks of said Milwaukee River above low-water mark; that
there is no tide in said river to ebb and flow; that the said river
at said place has little or no current, is of very uniform height,
not varying much over a foot or two during the whole season
of navigation, and that the current is sometimes wholly reversed
and the river slightly raised whenever there is a steady wind
from the east and southeast blowing the water from Lake Mich-
igan up into said river. That lots one, two, three and four in
block 158, with the large warehouse thereon standing, were and
are owned by this defendant, and are situated at the junction of
the Menomonee River with the Milwaukee River, and the depth
of the water over the whole space where the said dock line was
established, and one hundred feet east thereof towards the cen-
tre of the river, was not much if any greater than at the time
the same was established and is not now than it was all over
lots eight, nine, ten and eleven, of said complainant, the said
four lots of this defendant, the space between the former and
the latter, Reed Point and Peter's streets, the north half of
blocks forty-seven, forty-eight and forty-nine, the whole of blocks

one hundred and fifty-six, one hundred and fifty-seven and one hundred and fifty-eight, and the east half of blocks one hundred and forty-six and one hundred and forty-seven were, before they were filled in by the labor of man, and all are also inside of the meandered line of said river as established by the government survey.

This defendant further answering, says, although the said ordinance dock line as alleged, nowhere touches the bank of said river above low-water mark; that it does, however, touch it at the water line or low-water mark at the northeast corner of his said lot number one, according to the accompanying map (which locates the corner of said lot about eighteen feet further up the Menomonee River, than it was given to him by the city surveyor in 1848, and then actually docked out and filled in by this defendant, and which last-mentioned location he believes to be most correct), while the complainant in respect to some of his lots on the Milwaukee River, has built out his dock more than seventy-five feet outside and beyond the water line or low-water mark, and why this defendant should be restrained to the water line or low-water mark, and not suffered to go an inch beyond it, while the complainant below him, and the Milwaukee and Mississippi Railroad depot and dock farther east, nearer to the main current and navigable channel of said river, and where said river is also narrower above him, and freely and without objection allowed to go the distance below the water line they have (of which, however, this defendant does not complain), he humbly prays to be enlightened.

And this defendant further answering says, that in the year eighteen hundred and forty-seven, he commenced building a large warehouse upon, and filling in, and docking out his said lots three and four, in block one hundred and fifty-eight as aforesaid, and the spring following, said lots one and two, and by the direction of the city surveyor as to the northeast corner of said lot number three, and measurement from thence to the northeast corner of lot number one, then built out and carried his said dock by piles and timber, down to the corner of lot number one, and had the Menomonee River adjacent to said lots and the mouth of said last-mentioned river, at a heavy expense, dredged out, and the dirt cast over said dock upon said lots two, three and

four, and near down to the northeast corner of said lot number one; that said warehouse, lots and dock of this defendant have ever since been and still are used by himself and his tenants for the transaction of a wharfage and warehouse business, and vessels of various sizes, including the largest, have ever since been in the habit of receiving and discharging their cargoes at said dock and warehouse, to the great convenience of the commercial and shipping interest of the city and state, to the profit and advantage of the defendant, and his lessees. That never until just before the filing of this bill, had any piles been driven or dock attempted to be built on the east line of said lot number one, and adjacent to the Milwaukee River, but that about a year ago (just previous to the filing of the bill in this cause), having completed an addition to the east side of his said warehouse, and needing all the ground there owned by him for the transaction of his said wharfage and warehouse business, and the said Menomonee River again needing dredging out, and his lots, particularly lot one, but partly filled in before, needing filling up to the height of his said other lots, he commenced driving piles down the river on a straight line with his wharf, a distance of about sixty feet east of the northeast corner of said lot one, and then made an angle and drove piles about seventy feet in a southerly direction, when his said work was arrested by a writ of injunction in this cause, to his great injury and damage. And this defendant further answering says, that the said dock line so established or pretended to be established by the said ordinance referred to in complainant's bill, is not only over one hundred feet west and outside the navigable portion of said Milwaukee River, but takes off and includes somewhere about eighteen feet of the northeast corner of lot one, as located by the then city surveyor (by I. A. Lapham's city map), purchased, deeded to and actually paid for by this defendant, and actually docked out and partially filled in by this defendant years previous thereto, to wit: in eighteen hundred and forty-eight, when he built his wharf and finished his warehouse as aforesaid.

And this defendant further answering, says that the driving the piles aforesaid to the extent, and in the direction aforesaid, is all the "wrongfully and unlawfully blocking up the channel of said Milwaukee River in front of said lots two, three, four and

five, of your orator," (said complainant) specified and set forth in the said complainant's bill of complaint in this cause, and he therefore, positively and unequivocally denies that his driving the piles aforesaid, at the place aforesaid, does wrongfully or unlawfully, or in any way or manner whatever, block up and obstruct the navigable channel of said river, or that the piles aforesaid or any dock or wharf that may be erecting thereon, is or can be in front of said lots, two, three, four and five, of the said complainant, the latter being on the bend of the Milwaukee River, and about four hundred feet south of the Menomonee River aforesaid, where the said piles were driven, and the last-named lot only touching the dock at the extreme corner thereof.

And this defendant further answering, denies that his driving the piles, and making and building a wharf thereon, and filling in the same, as this defendant was about to do, when the injunction was served on him, did, would or could in any way hinder and obstruct the navigable waters of said river in their natural and wonted course, or that the navigable channel of said river was or could be, by such erections straitened and obstructed in its capacity for the passage of vessels engaged in the navigation thereof, as stated in said bill, for the reasons, first, that the said constructions complained of, are at a point in the river where the same is still much wider than either above or below that point; second, that it is near the bend of the river, and the outer curve thereof; third, that said piles and proposed dock are still further west and back from the centre and navigable channel of said river than the dock and river immediately north thereof; fourth, that the said dock completed as proposed by the defendant, when continued upon that line south, would strike the complainant's dock at the north end thereof, or section line about two hundred and sixty feet south of the northeast corner of this defendant's dock, and which is at least one hundred feet west of where the complainant's dock should be, for the purposes of navigation and commerce; and fifth, that notwithstanding the channel of said Milwaukee River directly east of the said lots of this defendant, and on a straight line to the centre of said river, has heretofore been dredged out; and as recently as this spring, there is not, even now, four feet of water between the said proposed dock and the navigable channel of said river until you get out over one

hundred feet farther east, and towards the centre of said river; that the average draft of water of vessels engaged in the navigation of Lake Michigan and said river, is about four feet when high or unloaded, and when loaded from seven to ten feet.

And this defendant further answering, says that he has, at great expense, procured an accurate plot or map according to scale, to be made by the city surveyor, of said river at said point, and the lots, blocks, docks, warehouses and streets adjoining, and accurate soundings and measurements of the depth of water in said Milwaukee River, in the vicinity of the lots of this defendant, of the said complainant, and the waters intervening and in front and towards the centre of said river, to be made and taken, which said map or plot (except as to the location of the northeast corner of his lot number one) and the soundings indicated thereon, this defendant verily believes to be true and correct, and herewith files with this answer as exhibit A, and prays that the same may be taken as part of this his answer to said bill.

And this defendant further answering, says that it is not true, and he therefore denies that his building a dock or wharf, and filling in the ground inside thereof at the place and in the manner proposed by him, when arrested by the injunction of this honorable court, will or would in any way or manner whatever injure the lots and dock of said complainant for any purpose, or that by means thereof the said dock and wharf and lots of the said complainant will be rendered difficult of access from said river, the ingress and egress of vessels, steamers and other craft navigating said river to and from the same; be seriously or at all hindered or obstructed thereby as alleged in' the said bill, even though all the waters of the said Milwaukee River east of block one hundred and fifty-eight to the centre of the river and south to the north line of the lots of the said complainant, now not o sufficient depth to admit the passage of vessels, were all dredged out of sufficient depth for that purpose, because the said dock and wharf of this defendant, at the point proposed, or even eighty feet further east and towards the centre of the river, is not now and then would not be in any just or true sense in front of the said lots of the said complainant.

And this defendant further answering, says that it is not true,

and he therefore denies that the said dock and wharf of this defendant, if completed at the place proposed by him, will greatly or in any way or manner interrupt, embarrass, cut off, hinder and prevent, communication between said dock and lots of complainant, and the main channel of said river, as the latter is east from the dock or wharf of the complainant, and the dock or wharf of the defendant is north therefrom, and the course of the river at said point is north and south.

And this defendant further answering, denies that the said proposed dock of this defendant at the place proposed, or even one hundred feet further east and towards the centre of said Milwaukee River (to which distance he insists he has the abstract and legal right to carry it), will confine the current of the waters of said river and divert the same from the vicinity of the dock and lots of the said complainant, where the same would naturally flow if unobstructed as stated in said bill, and for the very good reason that never within the memory of the oldest inhabitant, before the said dock of the said complainant, of this defendant or any dock whatever on said river was built or since, was the " main current " of the waters of said Milwaukee River at said point within three hundred feet of the said dock of said complainant; and in the opinion and according to the best judgment, information and belief of this defendant, neither can all the dredging in the world bring, confine and keep the " main current " of said river into the said right angular dock of said complainant at said place.    And this defendant further answering, says that he does not believe that the said proposed dock of this defendant at the place proposed, or eighty, or one hundred feet further east, will create eddies or counter currents and cause that portion of said river to be filled up and obstructed by deposites of mud and other materials borne and conveyed in and by the waters of said river as alleged in said bill; but on the contrary he believes and alleges that the further east the defendant should carry his dock on the Menomonee River, the better in this respect would it be for the waters adjacent to the complainant's wharf, because the said Menomonee River running through miles of low, swampy, marshy ground at its confluence with the Milwaukee River, often has borne down upon its bosom several rods square of bog—miniature islands—composed of

earth, sand, roots and weeds, which before the apprehended grievances complained of. by the said bill, have found their way into the said private basin of said complainant, where his said dock or wharf is built, and which if the dock of this defendant on the Menomonee River was carried down one hundred to one hundred and fifty feet below its present · point and to the main current of said Milwaukee River, would be less likely to eddy around and annoy the said complainant, in the exclusive enjoyment of his said private basin—the same never having been, and in the opinion of this defendant, almost impossible to be used for commercial purposes.

And this defendant further. answering, says that he does not deny in the abstract that the said dock of the said complainant was lawfully built in the place described in the bill, and that it would have been equally lawful for him to have built one half a mile further west, and on the top of a high hill. But in reference to the legal and just rights of this defendant, as a riparian proprietor upon a navigable stream, in a city where docks, wharves and warehouses are valuable and necessary to the commerce and prosperity of the city and state, and allowed and encouraged by law to be built; this defendant does deny that he shall be considered bound in law to surrender his absolute and unqualified right of property and possession to ground covered by water, not navigable in fact, to the extent of eighty or one hundred feet, for the sole benefit and accommodation of the complainant, so that he may have the same amount more of water front on the bend of the river, several hundred feet west, and outside of the main current and navigable bed of said river, either to him, the city, or the public, without the necessity thereof being first established by the verdict of a jury, and just compensation made according to the provisions of the constitution: this he humbly submits he ought not to be compelled to do, nor ought he, he further submits, to be restricted in the just and lawful use of his own property in the usual lawful way property of that kind is accustomed to be used, not injurious to the equal, lawful rights of contiguous owners in the like use of theirs as equal, and no more than equal, riparian proprietors.

And this defendant further answering, says that the accompanying plot or map of said river at the said point of alleged

obstruction, and the river, etc., above and below it to the extent there indicated, and the depth of the water thereon noted at the various points indicated, he believes to be strictly accurate and correct; that in his opinion there is just as much reason and necessity in fact and in law for extending the said ordinance dock line north in the same direction up to Spring street bridge, or half a mile north of the mouth of the Menomonee, and thus through the centre of the Milwaukee and Mississippi Railroad depot warehouse, Higby's, and the other warehouses on the west bank of the Milwaukee River (the east half of all those warehouses being also all nearer the centre and main channel of said river), as there is or was for establishing the said dock line as alleged. But he does not insist or desire that any such unnecessary or injurious line should be established, and on the contrary insists and humbly contends for the equal and just rights of all the riparian proprietors on said stream, to dock out and fill the ground adjacent to the said river, to a point or line where the said river in its natural and ordinary stage and state is in *fact* navigable for such boats and vessels as usually navigate said waters; and should the business and commerce of the city require an extension of the area of its navigable waters beyond that, by dredging or artificial means (which he denies), that a jury be first called to establish the necessity and extent thereof, and that the proprietors whose private property is thus taken for public use, should receive a just compensation therefor, according to the constitution and equity and good conscience.

And this defendant further answering, says that it is not true, and he therefore denies that by means of the piles so driven by him as aforesaid, in the place aforesaid, he has taken possession of and appropriated to his own exclusive use for the purpose of the construction of a dock or wharf as aforesaid, a considerable portion of the bed and navigable channel of said Milwaukee River, as alleged by the said complainant in his bill, or any portion whatever of the bed and navigable channel of said river, for the reason before stated, that said piles were not driven within *one hundred feet* of the "*bed and navigable channel*" of said river as it now is, or ever was.

The answer was also amended, but it is not material to notice the amendment.

The testimony taken and produced on the trial was conflicting, being chiefly matters of opinion in reference to the effect which the building of the.defendant's dock or wharf would have upon the current of the waters of the two rivers, the Milwaukee and the Menomonee, and the deposit of sand and other material brought down by the current. It appeared, however, that the vessels used in navigating the Milwaukee River, drew, when loaded, from seven to eleven feet of water, and when light, from three and a half to eight feet; that the ordinary or average depth of water, where the defendant was constructing his wharf, was from one to three feet. It further appeared that the common council of the city of Milwaukee, had previously by ordinance, established a dock line, along said Milwaukee River, and that the defendant's wharf extended beyond said dock line, towards the channel of the river. It also appeared that the Milwaukee River, at the point in question, and for a considerable space thereabout, spread out over a large surface, making a sort of marsh covered with water to the depth of from one to three feet; that the basin in front of the complainant's lots was naturally of this kind of marsh, and had been made of its present depth by dredging, the material excavated having been used for filling up the lots; that the place of the wharf of the complainant was not accessible to vessels used in navigating the river and lake in a natural state, but had been made so by dredging out the basin from the wharf to the natural channel of the river, and that the portion of the river where the defendant was building his dock, was not, in its natural state, navigable for vessels ordinarily used in navigating the river.

Various opinions were expressed in regard to the effect which the construction of the defendant's dock as contemplated, would have upon the channel of the river, and its use for the purposes of navigation; and to this point a large mass of testimony was taken, the nature and result of which will appear in the opinion of the court, but the evidence is too voluminous to be inserted at length.

After hearing, the court below made the following decree:

"That an injunction issue, out of and under the seal of this court, to restrain the said Clark Shepardson, defendant, his heirs, personal representatives, counselors, attorneys, agents, confed-

erates, abettors, and each and every of them perpetually, from putting, placing or driving, or causing or permitting to be put, placed or driven, any timbers, piles, earth, stones, gravel or other material whatever, in or upon the soil and bed of the Milwaukee River, south of the mouth of the Menomonee River, and east of a line parallel with, and one hundred and forty-two east of Reed street, in the fourth ward, in the city of Milwaukee, and state of Wisconsin, and from using or in any wise interfering with the said Milwaukee River, and the bed and channel of said river, east of and adjacent to said line, and especially east of and adjacent to block one hundred and fifty-eight in said fourth ward, so as in any manner to hinder, prevent, disturb, or interrupt the flow of the waters of said river, and the free use and enjoyment thereof, and of the whole thereof, east of said line as a common and public highway by water.

" And it is further ordered and decreed that said Clark Shepardson, defendant, within sixty days after service upon him of a copy of this decree, abate and completely remove from said Milwaukee River, at his own expense, all timbers, piles, earth, stones, gravel and other materials of whatever nature, which he, the said Shepardson, has fixed, placed or driven, or caused to be fixed, placed or driven into or upon the soil and bed of the Milwaukee River, east of the line aforesaid, and that within the time aforesaid, he, the said defendant, make the said river east of, and adjacent to said line, and of said block one hundred and fifty-eight, in all respects as free and clear of all artificial obstructions to the navigation thereof, as the same was immediately prior to the fixing, placing or driving of such obstructions and materials by said defendant as aforesaid," and for costs, &c.

On pronouncing the decree, the court below gave the following opinion as the reasons therefor, which under the rule was returned to this court:

The first question to be determined is the right of the complainant to file his bill.

That question has already been determined by the Supreme Court, if the proofs in the case sustain the allegations of the bill.

The demurrer having been overruled by the Circuit Court for Milwaukee county, and that decision having been sustained by

the Supreme Court, the case of the complainant, if made out by the proof as stated in his bill, is *res adjudicata.*

I think the evidence clearly shows the complainant's title to the soil where his docks are erected; and the bill charging, and the answer not denying that they are built upon the line between his lots and the Milwaukee River, the dock lines established by the city and by the authority of the city, he is not guilty of erect- ing a nuisance himself by obstructing the navigable waters of the Milwaukee River. His erections are therefore to be deemed law- ful, and he may demand the protection of the law against their injury or invasion. The defendant insists that inasmuch as the waters of the Milwaukee River, where the complainant's docks were built, were not, in their natural state, of sufficient depth, to admit of navigation by vessels engaged in the lake trade, that the complainant by dredging them out to navigable depth, has only constructed a private basin, which is held by him as mere private property; and that, therefore, he is not a riparian proprie- tor, and entitled to the rights, and to subject others to the duties of riparian proprietors. It is not necessary to pass upon that question.

Whether it be regarded as a private basin, or a portion of a public river, in my judgment would make no difference. His docks whether situated on a private basin, or public basin, are equally entitled to the protection of the court.

The next question to be determined is whether the dock about to be constructed by the defendant, is within that portion of the waters of the Milwaukee River which are "*publici juris,*" which are a part of the public highway or appurtenances to the same in such a sense as to be embraced within the navigable waters of the river.

If such erection is within such waters, and made without pub- lic authority, it is a nuisance *per se.*

As to rivers where the tide ebbs and flows from the sea, all private rights in the land terminate at high-water mark; and the distinction made as to fresh water rivers emptying into these great inland seas where the waters flow and reflow upon the level of the lake, is a distinction without any difference, except that the water of one sea is salt, and the other fresh. Upon principle, the rights of the public should be the same in the port

of Milwaukee to low-water or high-water mark, that they are in the port of New Orleans or New York.

But it seems to be conceded that upon authority, where the water of the river is fresh the riparian proprietor may have the title in the soil to the bed of the stream under the water; but it is subject to the public easement in the waters upon it. The important question is, where does the public right begin, and where does it end?

Is it where the water is ten feet, six feet, or one foot in depth, or is it at low-water mark?

I know of no rule which the court can establish, which will not lead to endless confusion and conflict, unless it be at low-water mark from bank to bank.

It is true that for the purposes of commerce, a large portion of the Milwaukee River, at the port of Milwaukee, may not be required.

It is competent for the state to regulate and improve the channels and harbors of its navigable rivers, and for that purpose may straighten its channel and deepen its harbors and mooring places, and may regulate the dock and wharves upon its banks, so long as their essential character as navigable, is not impaired. But without public authority an individual has no right to make obstructions below low-water mark.

I must hold, therefore, that the proposed construction of the defendant is a nuisance *per se*.

The next question is whether the complainant, by such an erection, will inevitably suffer special injury of a character irreparable—not capable of reparation in damages.

This river and harbor may be considered first in its natural state.

If left without dredging out, and natural causes suffered to operate, the inevitable result of extending the south bank of the Menomonee sixty feet further southeast into the Milwaukee River, will be, to extend the point of confluence down the river and the place where the deposits are made. The extension of the bar will follow, and such extension in effect remove from the complainant's lots the navigable channel of the river; that is a special injury which he sustains, which does not affect the public generally.

Again, if this harbor and river be considered in relation to its future improvement, the special injury would be equally great. The proposed erection is of such a nature as to require a heavy expenditure of money, and when completed, would be of that fixed and permanent character that its removal would also require a large expenditure.

The evidence and conflicting opinions of the witnesses in this case, as well as the case itself, shows that no rule of damages could be adopted which would do justice between the parties by suffering this erection to go on and sending the complainant to a court of law to recover his damages.

Decree for perpetual injunction.

*J. Stark*, for the complainant.

*Peter Yates*, for the defendant.

*By the Court*, WHITON, C. J. Since this case was before this court on a former occasion (*see* 2 *Wis. Rep.* 384) the bill of complaint has been amended, but the amendment does not appear to make a new statement of the allegations contained in the bill, necessary.

The answer of the defendant admits the building of the dock or wharf by the complainant, at the place mentioned in the bill, and that the complainant caused the bed or channel of the river in front of the lots to be dredged out, but denies, that by this means the said lots were made accessible to vessels of the largest class navigating the river.

The answer admits the fact of the establishment of the dock line by the common council of the city of Milwaukee, at the place mentioned in the bill, but states many facts for the purpose of showing that the said line was not legally established, and denies that the common council had the power to establish the line at the place mentioned in the bill, without the consent of the defendant, for the reason that it is one hundred feet back from the navigable bed or channel of the river, thus preventing the defendant from occupying his land between that line and the river. This land, the defendant contends, is his private property, and could not be taken from him by the corporate authority of

the city of Milwaukee, under our constitution, even for a public use, unless the necessity for the taking was first established by the verdict of a jury.

The answer admits that the defendant drove piles in front of his own lots, but denies that any were driven in front of those belonging to the complainant. The answer contains many other matters, but we do not deem it essential to notice them.

At the hearing a great deal of testimony was used, which, as it depended to a great extent upon the opinions of the witnesses in regard to the effect that the wharf or dock which the defendant was constructing, would have upon the flow of the waters of the river, and the deposits of earth, was very conflicting. It appears by a map which was in evidence, that the lots belonging to the complainant are situated on the Milwaukee River, a short distance below the place where the Menomonee River unites with that stream, and that the lots of the defendant are upon the Menomonee and Milwaukee Rivers, extending a considerable distance along the former stream, to a point opposite the place where it joins the latter river, and from that point a short distance down that stream. The piles driven by the defendant are in both streams, extending from a point opposite the place of confluence, up the Menomonee River and down the Milwaukee River, but do not extend beyond his lots. It further appears, that, owing to the formation of the bank of the river at the place where the complainant's lots are situated, some of them front the stream at the place of confluence, although situated at some distance below it, and others front the stream as it flows past them. It further appears, that the dock or wharf of the complainant has two fronts, corresponding to the position of the lots.

This court has decided that riparian owners who are bounded on a stream above the ebb and flow of the tide, own the land to the centre or thread of the stream, and that, where the stream is navigable, the land covered by it is subject to the right of the public to use the stream as a public highway for the passage of vessels employed in its navigation; but that for all other purposes the right of the riparian owner to the use of the land covered by the water is perfect. *Jones vs. Pettibone et al.*, 2 *Wis. Rep.* 308.

This principle is too well settled by the authorities, to be disputed. It follows that both the complainant and defendant as

such owners, have the right to use their land which is covered by the water of the river, in any way compatible with the use of the stream for the purposes of navigation; but this they cannot interrupt. They may therefore construct docks or landing places for goods or passengers, taking care that vessels employed in navigating the stream are not impeded in their passage, nor prevented from the use of all parts of the stream which are navigable. It is apparent that both the complainant and the defendant have equal rights; that is, equal in proportion to the quantity of land which they severally own along the margin or bank of the river, and that neither of them can so use his land as to impair the right of the other. If the complainant chooses to excavate a basin on his own land, within which vessels can lie and discharge and receive their cargoes, we think he has an undoubted right to do so, provided the navigation of the river is not thereby impaired; but he cannot by adopting this mode of improving his property, impair the right of other riparian owners to the use of their property, or impose additional duties or burdens upon them.

By applying the principle here stated to the facts of this case which are established beyond dispute, we think it certain that the rights of the complainant as a riparian owner will not be impaired by the improvements which the defendant has commenced. It is stated in the bill, that the defendant was engaged in driving piles and putting other obstructions in the river in front of the complainant's lots and dock, whereby the channel of the river was greatly straitened and obstructed. When the case was before us on a former occasion, these facts were admitted by the demurrer to the bill, which the defendant had put in. We were then of opinion, that the facts stated in the bill showed that the rights of the complainant as a riparian owner, would be most injuriously affected by the obstructions which the defendant was placing in the stream, and if the testimony showed such a state of facts our opinion would be unchanged. But the testimony shows, that the piles, &c., which the defendant is placing in the river, are not in front of the complainant's lots in any just sense of that term, but that they are in front of the defendant's own lots. It is true, that the basin which the complainant has excavated, has two fronts, one of which is towards

the river as it flows by the lots, and the other faces the descending stream. But the obstructions which the defendant placed in the river can be said to be in front of the complainant's dock, only because they are above it. This does not sustain the allegations contained in the bill.

It is to be borne in mind that both the complainant and the defendant have equal rights in respect to their land upon the river, and that neither can impair the rights of the other. The fact being established that the piles and other materials which the defendant has placed in the river, are not in front of the complainant's dock in any just sense of that term, and do not, by their mere positions, cause any injury to the complainant, it remains to be seen whether the testimony establishes the fact that any injury will result to him by the effect which the piles, &c., will have upon the flow of the water and the deposits of earth or otherwise. In considering the testimony with reference to this fact, we do not intend to admit that a riparian owner can, by adopting a peculiar mode of constructing his dock, compel other riparian owners to adopt the same mode, or prevent them from adopting the ordinary mode of construction. The complainant, it appears, instead of constructing his dock along the margin of the river on the line where the water becomes of sufficient depth to permit vessels to navigate it, has built his dock in a place where excavation of the earth was necessary in order to permit vessels to approach it; in fact, constructing a basin with two fronts, one of which is towards the river as it flows by the lots, and the other towards the descending stream. We do not intend to decide whether, in such a case, if other riparian proprietors should construct docks on the line where the water becomes of sufficient depth to permit the approach of vessels, and the docks thus constructed should cause a deposit of earth in front of the dock of the complainant in such a manner as to prevent vessels from approaching it, the latter could justly complain. Upon this subject we shall give no opinion, because we do not think the testimony shows that such will be the effect of the dock which the defendant is constructing. The testimony upon this subject, as we have before stated, is very conflicting, and by no means sufficient to warrant the interference of a court of chancery to prevent the defendant from proceeding

with the construction of this dock. The principle which governs courts of equity in regard to cases of this nature, was thus stated in the opinion of the court when this case was before us at a former term : "In cases of this nature, where the acts which create the public nuisance cause also private and special injury to the plaintiff, an action at law will lie ; and where the complainant in a bill in equity shows that acts are about to be committed which will inevitably produce the same result, the court will interfere by injunction to prevent the threatened injury, if it is of such a nature as to justify the issuing of the injunction. *See* 2 *Wis. Rep.* 384. This we suppose to be a correct statement of the law applicable to cases of this description, and the testimony by no means makes out such a case on the part of the complainant.

The conclusion at which we have arrived in regard to the effect of the testimony, is decisive of the case, because, however illegal the conduct of the defendant may be, the complainant cannot obtain relief from a court of equity without he shows that he shall suffer special injury unless such relief is granted.

But another matter was argued by the counsel for the parties, and we have concluded to express our opinion in regard to it. And that is, the effect of the establishment of the dock line (as it is called) by the common council of the city of Milwaukee. The complainant in his bill alleges that such a line was established by the common council, that his dock is built on the line thus established, but that the dock which the defendant is constructing, extends into the channel of the river more than fifty feet beyond the said line.

The authority to establish the "dock line" is by the complainant supposed to be conferred upon the common council by the legislature. Assuming that the complainant is correct in the construction which he has given to the act of the legislature, which he contends confers the same, it may be well to consider the authority of the legislature in relation to the subject. By our constitution it is provided, that the property of no person shall be taken for public use without just compensation therefor. *Const. Wis., Art.* 1, 5, 13. We have before stated, that a riparian proprietor bounded by a stream above the ebb and flow of the tide, but navigable in part, owns the land to the centre or thread of the stream, and that the public have the right to use

the stream for the purposes of navigation, but that in all other respects his right to the soil is perfect.

It seems from this statement of the law applicable to cases of this nature, that the legislature has no authority under our constitution to take land thus situated for public use without making "just compensation therefor." If land bounded by a stream is the property of the riparian owner, it can no more be taken and appropriated by the public to its own use without compensation than any other property.

Could the legislature grant authority to the common council of Milwaukee to establish a "dock line" so as to prevent a riparian owner from constructing a dock on his own land at a place where it would not interfere with the navigation of the river, without making compensation for the property which might thus be taken.

Suppose the "line" should be established at a distance from the navigable part of the river, and the land between the "line" and the navigable part of the river should be rendered worthless by the establishment of the "line" at the place fixed by the common council, would not the property of the riparian owner in such a case be *taken* in the just sense of the term? We are inclined to think that it would, and that in such cases it would be necessary to make compensation to the owner for the property which would thus be rendered valueless by this act of the common council.

In the opinion which we have given, we do not of course intend to deny the authority of the legislature to grant power to the common council to prevent the erection of nuisances, or to prohibit the carrying on of noxious or offensive trades within the limits of the city, or in particular places within the city, as this depends entirely upon another principle.

For the reasons above given, the decree in this case must be reversed.