become forfeited and void; that said notice was duly addressed as above set forth, and mailed to the person above referred to at his last known post-office address; and that postage on said notice was prepaid by said company." There is nothing to identify this alleged notice of December 6th with the policy in suit. It appears from the record that he had various policies, and he might have had a dozen policies with the defendant, but the affidavit does not disclose anything from which the court could determine that this notice had any relation to the policy involved in this action, assuming the affidavit to be good in other respects. But the affidavit, to meet the legitimate requirements of evidence, should show to the court the contents of the notice, that the court might be able to determine whether the notice as sent complied with the requirements of the statute. The defendant having failed to show by affidavit that the insured ever had any notice of the matters required by the statute in relation to the policy in suit, it follows that it has failed to establish the defense put forward in its amended answer. Mere default in payments during the period of one year from such default does not operate to forfeit the rights of the insured. It is only where there is default in payments, coupled with the notice prescribed by the statute, that the rights of the insured are forfeited (Strauss v. Union Central Insurance Co., 170 N. Y. 349, 356, 63 N. E. 347); and, the defendant having failed to show that it ever gave the insured such notice, the plaintiff is entitled to recover.

We are the more willing to arrive at this conclusion, fully justified by law, because it appears that the defendant, by one of its local agents, received the premium in September which was defaulted in February, and that between the alleged default and the time of making the payment the defendant company indorsed upon the policy an agreement to pay to the plaintiff the amount of the insurance, the wife of the insured having died. It is hardly in a position now to claim the defense which it has been permitted to offer, but which is inadequate to defeat the just claims of the plaintiff.

The judgment appealed from should be affirmed, with costs. All concur.

---

(98 App. Div. 212)

TRUSTEES, etc., OF TOWN OF BROOKHAVEN et al. v. SMITH et al.

(Supreme Court, Appellate Division, Second Department. November 18, 1904.)

1. CONTRACTS—WHAT LAW GOVERNS.
    Laws existing at the time and place of making a contract which is to be performed where made form a part of it as if incorporated therein.

2. SAME—ROYAL GRANTS—IMPAIRMENT OF OBLIGATION.
    Under Const. art. 1, § 17, providing that nothing shall affect or annul any grant of land made by the King of Great Britain before October 14, 1775, such a grant is a contract the obligation of which cannot be impaired by the state.

3. NAVIGABLE WATERS—TITLE TO BED.
    Under the common law as it existed in 1693 the fee in all land covered by navigable water was in the King, subject only to the public rights of navigation and fishing.

---

¶ 3. See Navigable Waters, vol. 37, Cent. Dig. §§ 180, 184–187.

4. SAME—RIGHTS OF LITTORAL PROPRIETOR—WHARVES.

    Under the common law as it existed in 1693, a littoral proprietor had no right to maintain a wharf or other structure on land below high-water mark.

5. SAME—RIGHT OF NAVIGATION.

    The general public right of navigation does not justify the building of a wharf on land below high-water mark, and owned in fee by another than the builder.

Appeal from Trial Term, Suffolk County.

Action by the trustees of the freeholders and commonalty of the town of Brookhaven and another against Wilson R. Smith and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Willard N. Baylis, for appellants Morgan and Pell.

Willard P. Reid, for appellant Smith.

Walter H. Jaycox (W. Kintzing Post, on the brief), for respondents.

WOODWARD, J. The trustees of the freeholders and commonalty of the town of Brookhaven and Charles A. Post, their lessee, bring this action of trespass against Wilson R. Smith, John Morgan, and Albert W. Pell for building a pier upon certain lands under water in the Great South Bay, of which the plaintiff the town of Brookhaven is concededly seised in fee under royal grants dated in 1666, 1686, and 1693, respectively. The defendant Smith is the owner of a piece of upland bounded on high-water mark, his title being derived, it appears, under a patent dated in 1697, four years after the last grant to the town of Brookhaven of the lands under water in Great South Bay. The plaintiffs have been given a judgment in the present action, the defendants appealing.

There is practically no dispute as to the facts. The appellants say in their brief that they "do not dispute the fact that the respondent corporation is the owner of lands upon which the trespass is alleged to have been committed, or that the respondent Post, under a written lease, was entitled to possession thereof, but assert that said ownership and possession of respondents was subject to navigation and the riparian rights of appellants," and "this appeal squarely brings before this court for determination the question as to whether an owner of upland adjoining navigable water has the right to erect an appropriate and suitable dock into such water for the purposes of navigation, without the consent of the owner of the soil under water." While there is some slight difference of opinion as to the stipulation in reference to the character of the dock which has in fact been erected by the defendants, it may be said, for the purposes of this discussion, that the plaintiffs concede that, if the defendants have the right to construct a dock at all upon their premises, the one now existing is a proper dock; so that the case presents but a single broad question as to the rights of the parties in the lands lying between high-water mark and the navigable portions of Great South Bay.

It is well settled in our jurisprudence that the laws which subsist at the time and place of making a contract and where it is to be per-

formed enter into and form a part of it, as if they were expressly referred to and incorporated in its terms, and that this principle embraces alike those which affect its validity, construction, discharge, and enforcement. Von Hoffman v. City of Quincy, 4 Wall. 535, 550, 18 L. Ed. 403; Pritchard v. Norton, 106 U. S. 124, 132, 133, 1 Sup. Ct. 102, 27 L. Ed. 104, and authorities there cited; Barnitz v. Beverly, 163 U. S. 118, 125, 16 Sup. Ct. 1042, 41 L. Ed. 93, and authorities cited. Our state Constitution, after providing that all grants of land within this state, made by the King of Great Britain, or persons acting under his authority, after the 14th day of October, 1775, should be null and void, declares that:

"Nothing contained in this Constitution shall affect any grants of land within this state, made by the authority of the said King or his predecessors, or shall annul any charters to bodies politic and corporate, by him or them made, before that day; or shall affect any such grants or charters since made by this state, or by persons acting under its authority; or shall impair the obligation of any debts, contracted by the state or individuals, or bodies corporate, or any other rights of property, or any suits, actions, rights of action, or other proceedings in courts of justice." Section 17, art. 1, Const.

The grants of land to the town of Brookhaven, thus constitutionally ratified and confirmed, constituted contracts within the meaning of the Constitution of the United States, the obligations of which the state could not impair (Fletcher v. Peck, 6 Cranch, 87, 137, 3 L. Ed. 162; Danolds v. State of New York, 89 N. Y. 36, 45, 42 Am. Rep. 277, and authorities there cited); so that we are obliged to look to the law as it stood when these grants were made to determine what estate vested in the town of Brookhaven. If the town took a fee to the lands under water or to the lands below high-water mark, it is difficult to understand how the defendants could gain any better right to trespass upon that fee than they would to trespass upon the fee of a neighbor whose land was not covered by water; and while it is undoubtedly true that the defendants would have the right of transit over waters navigable in law, this is not a right to appropriate the land under such water to the exclusive use of the defendants by the construction of a dock which must, in the nature of things, interfere with the equal rights of others to the full use of the waters for the purposes of navigation.

In the case of Yates v. Milwaukee, 10 Wall. 497, 504, 19 L. Ed. 984, it was said of a riparian owner upon the Milwaukee river that:

"Whether the title of the owner of such a lot extends beyond the dry land or not, he is certainly entitled to the rights of a riparian proprietor whose land is bounded by a navigable stream; and among those rights are access to the navigable part of the river from the front of his lot, the right to make a landing, wharf, or pier for his own use or for the use of the public, subject to such general rules and regulations as the Legislature may see proper to impose for the protection of the rights of the public, whatever those may be."

The Supreme Court of Wisconsin (Walker v. Shepardson, 4 Wis. 486, 65 Am. Dec. 324) had previously held, in harmony with the doctrine of the common law (Smith v. City of Rochester, 92 N. Y. 463, 473, 479, 44 Am. Rep. 393, and authorities cited), that the title of the owner of such a lot extends to the center of the stream, subject to the easement of the public in its use for navigation; and that he "may construct docks or landing places for goods or passengers, taking care

that vessels employed in navigating the stream are not impeded in their passage, nor prevented from the use of all parts of the stream which are navigable," which is but another way of saying that every man may use his own property in what manner soever may please him, so long as he does not interfere with the rights of the public or those of his neighbor. In other words: "Rivers not navigable—that is, fresh rivers of what kind soever—do of common right belong to the owners of the soil adjacent to the extent of their land in length. But salt rivers, where the tide ebbs and flows, belong of common right to the state. That this ownership of the citizen is of the whole river, viz., the soil and the water of the river, except that in his river where boats, rafts, etc., may be floated to market, the public have a right of way or easement." See Smith v. City of Rochester, 92 N. Y. 479. The public having an easement, only, in the Milwaukee river, and it being an elementary principle that all easements are limited to the very purpose for which they were created, and their enjoyment cannot be extended by implication (Smith v. City of Rochester, 92 N. Y. 484), it followed naturally and inevitably that the owner of a lot bordering upon the stream could not be deprived of the right of constructing a dock over his own premises to the navigable portion of the stream, unless such dock interfered with the public easement of navigation. If the city of Milwaukee had owned the fee to the bed of the river, and had been demanding judgment against a trespasser, the decision of the court would have been controlling here; but a mere attempt on the part of the court to define the rights of a riparian owner in a case where the city was merely attempting to exercise an authority over the construction of docks along the water front, involving no question as to the rights of the owners of the fee, is not such an authority as to compel us to hold that the defendants in the present case were justified in trespassing upon the premises of the plaintiffs.

But rivers in which the tide does not ebb and flow are essentially different, as a matter of law, from tide waters. Fresh-water rivers are navigable or nonnavigable as a matter of fact. They are navigable if they are capable of affording navigation, and they are made highways by statute for limited purposes (Matter of Burns, 155 N. Y. 23, 26, 49 N. E. 246); while salt rivers, and tide waters generally, are navigable as a matter of law. A rule, therefore, which permitted riparian owners to build docks out to the navigable portions of a fresh-water river, would not necessarily confer any rights upon the owners of uplands bounded on tide waters, for the reason that the latter, being navigable in law, are navigable at every point covered by the water. But there was no such rule of law in respect to navigable waters as that suggested in Yates v. Milwaukee, supra, at the time when the grant was made to the town of Brookhaven, and, as we have already suggested, the rights of the parties are to be determined by the law as it existed at the time that the grant was made. "A grant, in its own nature," says Chief Justice Marshall in Fletcher v. Peck, supra, "amounts to an extinguishment of the right of the grantor, and implies a contract not to reassert that right"; and the question here is what rights of property became vested in the town of Brookhaven by its several grants of lands under water, for whatever rights it then acquired still belong to it. The United

States Supreme Court, in Shively v. Bowlby, 152 U. S. 1, 14 Sup. Ct. 548, 38 L. Ed. 331, had this subject under consideration, and it was declared upon a long line of cited authorities (page 13, 152 U. S., page 552, 14 Sup. Ct., 38 L. Ed. 331) that in "England, from the time of Lord Hale, it has been treated as settled that the title in the soil of the sea, or of arms of the sea, below ordinary high-water mark, is in the King, except so far as an individual or a corporation has acquired rights in it by express grant or by prescription or usage; and that this title (jus privatum), whether in the King or in a subject, is held subject to the public right (jus publicum) of navigation and fishing." The same high authority declares it to be "equally well settled that a grant from the sovereign of land bounded by the sea or by any navigable tide water does not pass any title below high-water mark, unless either the language of the grant or long usage under it clearly indicates that such was the intention." It seems entirely clear, therefore, that at the time of making the grants to the town of Brookhaven the King of England was the owner of the fee of the lands below high-water mark in Great South Bay, and that he had power to convey an absolute title, subject only to the public easements of navigation and fishing; and the grants under which the town of Brookhaven took title constituted contracts, the obligations of which could not be interfered with by the state. Four years after the King of England, acting through his colonial governors, had disposed of all his interest in the lands under waters in Great South Bay, the grant under which the defendants assert the right to trespass upon the lands of the plaintiffs was made; and just how this could convey any right to the lands under water, owned by the town of Brookhaven, does not occur to us. By the law of England, as it existed at that time, every building or wharf erected, without license, below high-water mark, where the soil belonged to the King, constituted a purpresture, and might, at the suit of the King, be either demolished or be seized and rented for his benefit, if it did not constitute a nuisance to navigation (Shively v. Bowlby, 152 U. S. 13, 14 Sup. Ct. 552, 38 L. Ed. 331, and authorities there cited); and no reason suggests itself why the defendants should have a higher right against the grantees of the King than they would have had against the sovereign of Great Britain had he continued the owner of the soil. "Land, in its legal signification, has an indefinite extent upwards, so that by a conveyance of land all buildings, growing timber, and water erected and being thereupon shall likewise pass" (Broom's Legal Maxims [4th Ed.] 258, and authorities cited in notes); and the town of Brookhaven, in taking title to the lands under water or below high-water mark, acquired all of the rights which the King of England had in such lands, which was an absolute right to its fullest enjoyment consistent with the public right of navigation and fishing. See authorities cited in Shively v. Bowlby, 152 U. S. 12, 13, 14 Sup. Ct. 552, 38 L. Ed. 331. There was a right of passage over the water. It is probably true that there was a right of passage over the shore for the owners of adjacent lands, which is the land between high and low water mark (Shively v. Bowlby, 152 U. S. 12, 14 Sup. Ct. 552, 38 L. Ed. 331), in reaching the water, but beyond this the riparian owner has no higher rights than those of the general public; this being determined by recent judgments in the

House of Lords, and recognized as the common law of England by our courts. Shively v. Bowlby, 152 U. S. 14, 14 Sup. Ct. 553, 38 L. Ed. 331, and authorities there cited.

The construction of a dock, while it may be useful to individuals engaged in navigation, is not involved in the public right of navigation as understood by the law. Navigation is defined by Bouvier (2 Bouv. Law Dictionary [2d Ed.] 196) as "whatever relates to traversing the sea in ships; the art of ascertaining the geographical position of a ship, and directing its course"; while the American and English Encyclopedia of Law (2d Ed., vol. 21, p. 445) declares that "to navigate means to steer, direct, or manage a vessel, and implies that the act is done by those on board of the vessel itself." We understand by the right of navigation the right to pass over waters freely and without obstructions. This right belongs to all craft, whether large or small, where the waters are in fact or in law navigable; and there can be no right on the part of a riparian owner or others, without the consent of the owners of the title to the lands, to erect any structure which shall interfere with this right, or which shall interfere with the absolute right of property in the owner of the lands. While usage or positive statutes in individual states, where the right to lands under waters is vested in the state, may justify the construction of docks and wharves out to the navigable portions of streams or waterways, no authority controlling here has ever held that, where the title to lands under water was vested in an individual or a corporation, an owner of lands bounded by high water had a right to trespass upon such lands and construct a permanent dock. We think the defendants have no such right in the case now before us.

The judgment appealed from should be affirmed, with costs. All concur.