The Honorable Pat Ellis State Representative 402 Poplar Street Clinton, Arkansas 72031
This is in response to your request for an opinion on whether a county quorum court can either limit or prohibit aerial spraying of herbicides on private property.
For the reasons that follow, it is my opinion that the answer to your question is "no", because a county's authority on this subject is preempted by both state and federal law.
In responding to this question, initial reference must be made to A.C.A. 14-14-801, which delineates the powers of counties. Authority is granted to counties in that statute to "[p]reserve peace and order and secure freedom from dangerous or noxious activities." A.C.A.14-14-801(b)(3). It must be noted, however, that a county is prohibited from passing "[a]ny legislative act contrary to the general laws of the state." A.C.A. 14-14-805(13). Specifically, A.C.A. 14-14-808 provides:
 (a) A county government exercising local legislative authority is prohibited the exercise of any power in any manner inconsistent with state law or administrative regulation in any area affirmatively subjected by law to state regulation or control.
 (b) The exercise of legislative authority is inconsistent with state law or regulation if it establishes standards or requirements which are lower or less stringent than those imposed by state law or regulation.
 (c) An area is affirmatively subjected to state control if a state agency or officer is directed to establish administrative rules and regulations governing the matter or if enforcement of standards or requirements established by statute is vested in a state officer or agency.
The statutes above become relevant in light of the fact that the state has delegated authority to the Arkansas State Plant Board to administer the "Arkansas Pesticide Use and Application Act", codified at A.C.A. 20-20-201 et seq.[1] The purpose of that act is to "regulate in the public interest the distribution, use, and application of pesticides to control pests as hereinafter defined." A.C.A. 20-20-202(a). The act gives the Plant Board authority to adopt regulations relating to time, place, manner, amount, concentration, or other conditions under which pesticides may be distributed or applied and also gives the Board authority to restrict or prohibit use of pesticides in designated areas during specified periods. A.C.A. 20-20-206(a)(1). Finally, authority is granted the Board in A.C.A. 20-20-222 to cooperate and "enter into agreements with any agency of the federal government, or this state or its subdivisions, or with any agency of another state to obtain assistance in the implementation of this subchapter, in order to: (1) Secure uniformity of regulations" [Emphasis added.]
It is my opinion that A.C.A. 20-20-201 et seq. was intended by the legislature to grant sole authority to the Arkansas Plant Board to regulate the aerial spraying of herbicides.[2] Although a local county ordinance entirely
 Even if I were to conclude that a local county ordinance prohibiting the aerial spraying of herbicides was not preempted by state law and regulations, there is a convincing argument to be made that such an ordinance would be preempted by federal law. The relevant federal provision is found in the Federal Environmental Pesticide Control Act of 1972, (7 U.S.C. § 136v(a) (1976)). It provides that "A state may regulate the sale or use of any pesticide or device in the State, but only if, and to the extent the regulation does not permit any sale or use prohibited by this Act." It is clear from the review of the legislative history surrounding this provision that it was intended to allow further regulation by the state only, and not by its political subdivisions. The report of the Senate Committee on Agriculture and Forestry emphatically states:
 The Senate Committee considered the decision of the House Committee to deprive political subdivisions of States and other local authorities of any authority or jurisdiction over pesticides and concurs with the decision of the House of Representatives. Clearly, the fifty states and the Federal Government provide sufficient jurisdictions to properly regulate pesticides. Moreover, few, if any, local authorities, whether towns, counties, villages, or municipalities have the financial wherewithal to provide necessary expert regulation comparable with that provided by the State and Federal Governments. On this basis and on the basis that permitting such regulation would be an extreme burden on interstate commerce,[3] it is the intent that section 24, by not providing any authority to political subdivisions and other local authorities of or in the States, should be understood as depriving such local authorities and political subdivisions of any and all jurisdiction and authority over pesticides and the regulation of pesticides.
S. Rep. No. 838, 92nd Cong, 2d Sess. 16-17, reprinted in 1972, U.S. Code Cong. Ad. News 3993, 4008. But cf. Deukmejian, supra.
Thus it is my opinion that a local county ordinance prohibiting the aerial spraying of herbicides would be preempted by both state and federal law, and of no effect.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
[1] See also, A.C.A. 2-16-401 et seq.
[2] With regard to the fact that such an ordinance may be interpreted as regulating air pollution, see Opinion No. 85-219, a copy of which is enclosed. prohibiting the aerial spraying of herbicides would appear to be a more stringent provision than state law, it is my opinion that the legislature has so pervasively covered the field of pesticide use and application that it intended that no additional local regulation occur. See generally, Smoot v. Village of Laurel Hollow, 471 N.Y.S.2d 128,98 A.D. 216 (1983), and 41 Oregon Op. Atty. Gen. 21 (1980). But cf. Deukmejian v. County of Mendocino, 204 Cal.Rptr. 897, 683 P.2d 1150
(1984). This conclusion is supported by the fact that authority is granted the Plant Board in A.C.A. 20-20-222 to enter into agreements with political subdivisions to obtain assistance in implementing the act, to secure uniformity of regulations. This uniformity could not be accomplished were each county allowed to adopt conflicting local ordinances.
[3] See generally, in this regard, Opinion No. 83-038, a copy of which is enclosed.