In the Matter of the Petition of JAMES W. BURNS, Appellant,
for the Appointment of Commissioners to Assess Damages
to Riparian Owners on Roaring Brook ; INGHAM D. TOWN-
SEND et al., Respondents.

   1. CONSTITUTIONAL LAW — EMINENT DOMAIN — PUBLIC USE.  So long
as the intended use of an improvement, sought to be accomplished through
an exercise of the right of eminent domain, is not restricted to private
parties or private interests, but is open to the whole public, it is no valid
objection to the act authorizing it that it will benefit one person, or some
class of persons, more than others, or that it originated in private interests
and was intended in some degree to subserve private purposes.

2. USE OF WATERWAY FOR FLOATING LOGS.   The use by the public of
a natural waterway to float logs from the interior of the state to the great
lakes is a public use, within the fair meaning of the Constitution; and
when the legislature has determined the necessity for the exercise of the
right of eminent domain to acquire such use (as, by L. 1896, ch. 338), the
validity of the act is not open to question on the ground that the use is
not public.

3. PROHIBITION AGAINST LOCAL ACT OPENING HIGHWAY NOT APPLI-
CABLE TO WATERWAY.   A private or local act declaring a natural water-
way, which was private property, open for use to the public, through an
acquisition of private riparian rights, (such as L. 1896, ch. 338, constitut-
ing Roaring brook " a public highway for the purpose of floating logs "),
is not within the scope of the constitutional prohibition against the passage
of local or private bills opening highways (Const. art. 3, § 18).

4. MEANING OF " HIGHWAYS."   The term "highways" in section 18 of
article 3 of the Constitution is used in its ordinary and popular sense,
comprehending only the ordinary highways under the care of local
authorities.

*Matter of Burns,* 16 App. Div. 507, reversed.

(Argued January 10, 1898; decided January 25, 1898.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
June 19, 1897, reversing an order of Special Term appoint-
ing commissioners to assess damages under chapter 338 of the
Laws of 1896.

The facts, so far as material, are stated in the opinion.

*Watson M. Rogers* for appellant.   The act does not assume
to take private property for private use.   (L. 1894, ch. 176;
*People ex rel.* v. *Smith,* 21 N. Y. 595; *Heyward* v. *Mayor, etc.,*
7 N. Y. 324; *Matter of Townsend,* 39 N. Y. 174; *B. P. Comrs.*
v. *Armstrong,* 45 N. Y. 243; *Matter of Fowler,* 53 N. Y. 62;
66 N. Y. 572.)   The act is constitutional.   (Const. N. Y. art.
3, § 18; *Matter of Woolsey,* 95 N. Y. 135; 29 Hun, 304; 92 N.
Y. 629; *People* v. *Petrea,* 92 N. Y. 128; *Leland* v. *Cameron,*
31 N. Y. 115; *Livingston* v. *Arnoux,* 56 N. Y. 507; *Keely* v.
*Saunders,* 99 U. S. 441; *Gonzales* v. *Ross,* 120 U. S. 605;
*People ex rel.* v. *Bd. Suprs.,* 8 N. Y. 317; *Kerrigan* v. *Force,*
68 N. Y. 381; *Sweet* v. *City of Syracuse,* 129 N. Y. 316; *Ogden*

v. *Saunders*, 12 Wheat. 270.)  The legislature has continuously enacted statutes in the same manner as this, making streams highways, and such contemporary interpretation by the legislature of this constitutional provision may be properly considered by the courts.  (*Matter of W. S. A. & P. R. R. Co.,* 115 N. Y. 442; 1 Story on Const. § 407; Cooley's Const. Lim. [5th ed.] 81.)

*C. S. Mereness* for respondents.  The question of public use is a judicial one and must be determined by the courts.  (*Matter of D. C. Assn.,* 66 N. Y. 569; *Taylor* v. *Porter,* 4 Hill, 140; *Embury* v. *Conner,* 3 N. Y. 511; *Matter of N. F. & W. R. Co.,* 108 N. Y. 375; 121 N. Y. 319; *P. W. W. Co.* v. *Bird,* 130 N. Y. 249; *Matter of Townsend,* 39 N. Y. 174.)  The act is unconstitutional.  (*De Camp* v. *Thomson,* 16 App. Div. 528; Const. N. Y. art. 1, § 7; *People ex rel.* v. *Trustees Vil. of Haverstraw,* 151 N. Y. 75; *Taylor* v. *Porter,* 4 Hill, 140; *Embury* v. *Conner,* 3 N. Y. 511; *Matter of D. C. Assn.,* 66 N. Y. 569; *Matter of S. R. C. R. Co.,* 128 N. Y. 408; *P. W. W. Co.* v. *Bird,* 130 N. Y. 249; *Matter of S. I. R. T. Co.,* 103 N. Y. 251; *Matter of Thomson,* 86 Hun, 405; *Matter of P. Bridge Co.,* 108 N. Y. 483.)  The act in question is void because it is a private or local statute laying out a highway.  (Const. N. Y. art. 3, § 18; *People ex rel.* v. *Banks,* 67 N. Y. 568; *Matter of Woolsey,* 95 N. Y. 135; *People ex rel.* v. *Bd. Suprs.,* 112 N. Y. 585.)  The petitioner claims that there is no proof before the court that the act in question was not reported to the legislature by commissioners to revise the statutes and, therefore, saved by the provisions of article 3, section 23, of the Constitution.  This is untenable.  (*Post* v. *K. C. Suprs.,* 105 U. S. 667; *South Ottawa* v. *Perkins,* 94 U. S. 260; 1 Rice on Ev. 35; *People* v. *Petrea,* 92 N. Y. 138.)  The act in question, chapter 338 of the Laws of 1896, is unconstitutional and void, because it does not provide proper means for the payment of the damages of the property owners.  (*Gardner* v. *Vil. of Newburgh,* 2 Johns. Ch. 168; *People ex rel.* v. *Hayden,* 6 Hill, 359; *Sage*

4

v. *City of Brooklyn*, 89 N. Y. 189; *Chapman* v. *Gates*, 54 N. Y. 146.)

O'BRIEN, J.   The only question involved in this appeal is whether the statute (Ch. 338, Laws of 1896) is a valid law. The court below has held it to be invalid because in conflict with the Constitution of the state.   A case which presents the question of the validity of an act of the legislature is always important in itself, but this case derives additional importance from the fact that, incidentally, the decision involves the validity of numerous other statutes of the same character.

The title of the act is " An act declaring ' Roaring brook,' in the town of Martinsburgh, in the county of Lewis, a public highway, and providing means for the assessment of damages to riparian owners thereof."

The first section provides that " Roaring brook, in the town of Martinsburgh, in the county of Lewis, from its junction with Black river to the head waters of said brook, in the town of Martinsburgh, is hereby declared to be and is hereby constituted a public highway, for the purpose of floating logs, timber and lumber down said stream."

The second section makes provision for the assessment and payment of damages to riparian owners injured by the use of the stream for the purposes declared in the statute.

The statute contemplates the taking of property by the exercise of the right of eminent domain.   The courts below have held that the use was sufficiently public to save the statute from attack, on the ground that there was contemplated a taking of private property for merely private purposes.

It cannot be doubted that a public highway, intended for public communication between the Adirondack regions of the state and the great lakes, and for the transportation of lumber, timber and logs, must in some degree, at least, be commercially beneficial to the public.   It may be, as suggested, that the passage of this statute was stimulated by purely private interests.   But that is largely true of every movement for opening highways in the country and streets or avenues in

cities. They originate in many cases in the persistent demands of one or more property owners who desire to bring their property into the market or to procure better access to it, and thus promote their private interests.

It is, no doubt, true that many useful public improvements have originated in efforts to promote private interests, and that possibly may be the origin of this statute.

But a statute is not to be condemned on the ground that it originated in private interests and was intended in some degree to subserve private purposes.

If every act originating in such motives should be declared void, it is to be feared that there are too many statutes that would not stand such a searching test. So long as the use intended is not restricted to private parties or private interests, but is open to the whole public, it is no valid objection to the act that it will benefit one person, or some class of persons, more than others. The question as to whether in any given case the use is public or private is judicial, and must be determined in the end by the courts. We think, however, that the use by the public of a waterway, such as that described in this statute, to transport property from the interior of the state to the sea or the great lakes is a public use within the fair meaning of the Constitution, and the legislature having determined the necessity for the exercise of the right of eminent domain, the validity of the act is not open to question on the ground that the use is not public. (*People ex rel. Herrick* v. *Smith*, 21 N. Y. 595; *Heyward* v. *Mayor, etc.*, 7 N. Y. 324; *In re Townsend*, 39 N. Y. 174; *Brooklyn Park Com.* v. *Armstrong*, 45 N. Y. 243; *In re Fowler*, 53 N. Y. 60; *P. W. W. Co.* v. *Bird*, 130 N. Y. 249; *In re Niagara Falls & W. R. Co.*, 108 N. Y. 375; 121 N. Y. 319.)

The conflict between this act and the Constitution was found in quite another direction. There can be no doubt that the bill is private or local within the meaning of the prohibition against the passage of such bills in certain cases contained in § 18, article 3 of the Constitution. The legislature is forbidden to pass a private or local bill " laying out, open-

ing, altering, working or discontinuing roads, highways or alleys," and this act was held to be in conflict with the Constitution, since it provided for opening or laying out a highway. The question is whether a private or local act declaring a waterway or stream open for use to the public is fairly comprehended within the constitutional prohibition against passing such acts laying out or opening highways.

It is quite true that in a certain sense streams and waterways are highways. The term *highway* is frequently used in a very broad sense. The sea is said to be the great public highway of nations. The canals and all public rivers and the great lakes are certainly highways. So are all the railroads. But surely the framers of the Constitution did not use the term in any such broad and extensive sense. Manifestly it is there used in a much more limited sense. The term, in its ordinary and popular sense, refers to the country roads under the management and control of the local authorities of the several towns or counties of the state. It does not even include streets or avenues in cities, as this court has expressly held (*In re Woolsey*, 95 N. Y. 135), though it cannot be denied that such streets or avenues are highways in the broad sense that I have mentioned.

The framers of the Constitution evidently used the term in its ordinary and popular sense, comprehending only the ordinary roads and highways under the care of local authorities. The very purpose of the restriction upon the power of the legislature was to remit to the local authorities such functions of government and administration as concerned the people of the locality and which could be better determined and discharged by such authorities than by the central legislative body at the capital of the state. There was no reason why the legislature should be permitted to deal with such a purely local question as the laying out or opening of a highway in a town any more than with the election of a supervisor. There was a general system of statute law under which highways, in the ordinary sense of the term, could be laid out and opened under the direction of local officers. But there

never was any general law under which a waterway, which was private property, could be thrown open or dedicated to the use of the public. Indeed, it is very difficult to conceive how any such general law could be formulated at all that would be operative, in any reasonable or practicable way, to accomplish the result through the action of local authorities.

When the stream or waterway passed through several towns or more than one county, as is generally the case, the authorities of one town or one county might be in favor of making it public while the other towns or the other county might be opposed. The result would be in all such cases that nothing could be accomplished, and in the conflict of local interests the general public good might be ignored. Therefore, since the purpose of the statute in question could not be accomplished under any general law, it is not within the reason of the constitutional prohibition or the mischief which it was intended to correct.

The intention of the law-making body, whether engaged in framing a constitution or enacting a statute, is the key to all sound construction. In such acts general words are sometimes used which, unless restricted by the courts to the particular sense in which they were obviously employed, the most unjust and absurd results would frequently follow. It is generally a safe and reasonable rule in all such cases to give effect to words and forms of expression according to their ordinary and popular meaning. The term *highway* in common language expresses the same thought as the word *road;* and while lawyers and juridical writers frequently use the word in a much larger sense, yet, it is plain, we think, that, according to every rule of construction, it was not so used by the framers of the constitutional provision in question. If the true construction of this provision of the Constitution was not as clear as it seems to me to be, we might well resort to another rule of construction with the same result. We frequently ascertain the meaning of a word or the sense in which it is used by its association with other words, according to the familiar maxim *noscitur a sociis*. The word *highways* is used in the

Constitution in association with the words *roads* and *alleys*, a clear indication that such a thing as a public waterway was not in the minds of the lawmakers.

The preceding words of the provision are equally unfortunate for the contention sustained by the court below. "Laying out, opening, altering, working or discontinuing roads, highways or alleys," are very awkward words when applied to a statute declaring a stream of water to be public. Roaring brook is a natural waterway. The statute under consideration does not lay it out, or open it, or alter it, or work it, or discontinue it, in any just or proper sense. The natural and physical situation remains absolutely unchanged. The stream was laid out by nature and the statute opens it only in the sense that what before was private property is now available to the use of the whole public. The mere change of ownership in the stream from private parties to the general public by operation of law, which can be accomplished only by making full and just compensation to the owners, is not the opening of a highway, except perhaps in a very remote or fanciful sense, and is clearly not within the scope of the constitutional prohibition against the passage of local or private bills opening highways.

The Constitution, like a statute, should receive a reasonable construction. It should be interpreted in such a way as to give it practical effect according to the intention of the body that framed it and the people who adopted it, and a fair application of this rule must result in the conclusion that the statute in question is not within the spirit or fair scope, and hardly within the letter, of the prohibition against the passage of private or local bills. It may be that this statute and numerous other statutes of the same character to be found in the records of the legislature are open to the objection that power was improvidently or unwisely exercised, or that public authority was enlisted in the promotion of purely private interests, although there is nothing on the face of the bill or in the record of which we can take notice to show that such was the fact. But even if all that be true, as claimed, the question

was clearly for the determination of the legislature. Having the power to enact such a law, the occasion for the exercise of the power or the particular case or circumstances that called for it were all matters exclusively within its own judgment and discretion.

The courts have no more right to encroach upon the province of the legislature than the latter has upon the province of the courts by assuming judicial functions. All questions, therefore, with respect to the necessity or propriety of such a law as that involved in this case belong to the law-making power and not to the courts.

The order appealed from should be reversed and that of the Special Term affirmed, with costs.

All concur, except GRAY, J., who dissents upon the ground the act was invalid for violating those provisions of the Constitution, as amended in 1874, which were intended to deprive the legislature of just such power to pass local laws.

Order reversed, etc.