(41 Misc. Rep. 108.)

GRAY et al. v. NEW YORK STATE TELEPHONE CO. et al. (two cases).

(Supreme Court, Trial Term, Broome County.     June, 1903.)

1. TELEPHONES—CORPORATIONS—RIGHTS—ERECTION OF POLES AND WIRES IN COUNTRY HIGHWAY—ADDITIONAL SERVITUDE.
　　The franchise of a telephone company, granted by the state, authorizing its construction of a telephone line, did not authorize it to construct its poles and wires along a country highway, in which an abutting owner has rights in common with the public, without such owner's consent, or compensation having been first paid, since the erection of such poles and wires constituted an additional servitude.

¶ 1. See Eminent Domain, vol. 18, Cent. Dig. § 312.

**2. SAME—PUBLIC SERVICE—DEFENSES.**

The construction of such poles and wires without consent of abutting owners or payment of compensation could not be justified on the ground of public service.

**3. SAME—INJUNCTION.**

Where a telephone company attempted to construct poles and wires along a county highway without consent or payment of compensation to abutting owners, such owners were entitled to an injunction restraining such construction.

Suits by Richard A. Gray and another against the New York State Telephone Company and another to restrain defendants from placing telephone poles on a country highway. Judgment for plaintiffs.

R. B. Richards (Richard H. Thurston, of counsel), for plaintiffs.
Roberts, Tuthill & Rogers, for defendants.

FORBES, J. These two actions were tried as one, so far as the facts therein are similar and material to the issue joined; separate proof being introduced where the evidence of title and occupation differed from each other. The actions were brought to restrain the building and operation of the defendant corporations in the erection of telephone poles and wires on each set of plaintiffs' lands, between the villages of Lestershire and Union, in the county of Broome. The general line of operation is to extend telephone service along said line between the cities of Binghamton and Elmira, N. Y. The lands in controversy lie upon the northerly side of a public highway, running westerly from Binghamton to Union, and are narrow strips of land between what is designated as the "State-Built Highway," on the south of said lands, and the New York, Lake Erie & Western Railroad Company, on the north. Prior to the attempted construction there were two sets of poles running along the highway in the vicinity of said lands—a line of telegraph poles, which is entirely upon the land occupied by and in use for the Erie Railway; also the line and poles of the Bell Telephone Company, which had theretofore secured from each plaintiff the right of way across said premises for the erection of poles and the construction of their lines between Binghamton and Elmira. The construction of the line in question was commenced and continued without the consent and against the protest of these plaintiffs. The defendants' agents went upon said lands, making excavations for the line of poles and erecting the same under the claim of a franchise from the Legislature of this state, but in defiance of the rights of the plaintiffs, until they were stayed by temporary injunction orders granted by Mr. Justice Lyon on the 26th day of February, 1903. The evidence shows that all of the poles erected upon the plaintiffs' lands are standing within the public highway, and that said line was designed to be erected and continued along said highway. I do not think the evidence shows that there is any probable or serious dispute of the plaintiffs' titles. The first four or five poles from the westerly portion, on the map designated as the "Christopher Gray Premises," having been erected upon the lands of the New York, Lake Erie & Western Railroad Company, the balance of said poles were erected—some 18 or 19 in number—upon the lands of these plaintiffs. At the time the injunctions were granted, the defendant corporations, by their agents

and servants, were digging holes and proceeding to erect poles along these lines upon land owned and occupied by the several plaintiffs. The plaintiffs, Richard A. Gray and William Gray, are now adjoining owners and in occupation of the loci in quo.

In these actions there are several legal propositions raised and submitted to the court. The defendant corporations claim that they have an absolute right to erect and maintain this line of poles, upon which it is intended by them to string at least 10 or more lines of wires, to meet the present and future service proposed: First, on the ground of the legislative grant from the state; second, on the ground of public service between the two termini, with the purpose of extending from this line northerly and easterly, connecting by consent with other telephonic companies an area of territory covering several hundred miles.

I do not think that the first contention can be sustained. It seems to be the settled law of this state that the placing of telephone poles and wires upon and along a surburban public highway puts upon the owner an additional burden, which a franchise from the state cannot impose, under the Constitution, without the consent of the owner, and without compensation to him for that additional burden. Andrews v. Delhi & Stamford Tel. Co., 36 Misc. Rep. 23, 72 N. Y. Supp. 50, affirmed in 66 App. Div. 616, 73 N. Y. Supp. 1129; Eels v. American Tel. & Tel. Co., 143 N. Y. 133, 38 N. E. 202, 25 L. R. A. 640; Coatsworth v. Lehigh Val. R. Co., 156 N. Y. 451, 51 N. E. 301; Palmer v. Larchmont El. Co., 158 N. Y. 231, 52 N. E. 1092, 43 L. R. A. 672; Peck v. Schenectady R. Co., 170 N. Y. 298, 63 N. E. 357.

The second proposition involves practically the same question, since it cannot be held that private individuals are entitled to take for, and appropriate to, their own use and purposes, lands, by the right of eminent domain, imposing a burden of this character upon the lands of others, although within the public highway. While it is undoubtedly the policy of the law that general public service to individuals along the line of a telegraph, telephone, or electric light line is a right to which the individual is entitled, where the service is put in operation, so that there may be no discrimination between individuals and corporations desiring to employ said service, still it would be improper to hold that for this purpose an individual may impose upon his neighbor, to his inconvenience and loss, the burden of such service, not having in himself the right of eminent domain. Matter of Burns, 155 N. Y. 23, 49 N. E. 246; Strobel v. Kerr Salt Co., 164 N. Y. 322, 58 N. E. 142, 51 L. R. A. 687, 79 Am. St. Rep. 643; Brewster v. Rogers Co., 169 N. Y. 83, 62 N. E. 164, 58 L. R. A. 495.

The question arises whether a stay by injunctive process is the proper remedy. It is contended by defendant corporations that there is an adequate remedy at law, and therefore the plaintiffs are bound to resort to that remedy. It is undoubtedly a principle of law that, where there is an adequate remedy at law, courts of equity will not hastily or unnecessarily interfere with rights which are designed in a large measure for a public benefit. It must be understood that the defendant telephone company is a private corporation seeking the benefits of public service, and devoting to its own use the revenues arising therefrom. This must be held to be the purpose for which the lines in question are

to be erected, since there is no suggestion that it is merely a philanthropic undertaking. I think it is well settled that where the rights of a party are wantonly and unnecessarily invaded, and his premises are to be damaged by such invasion, a restraining order may properly be granted. Matter of St. Lawrence & A. R. Co., 133 N. Y. 270, 31 N. E. 218.

1. It will not do to hold that another may recklessly and unlawfully enter upon and take possession of private property, and appropriate the same to his own use, without compensation, or by tendering to the party whose rights are invaded a nominal consideration for the property rights so sought to be taken and appropriated. I do not find any well-considered cases in the decisions of our own state where this claim is upheld, especially where occupation might work adverse possession. Amsterdam Knitting Co. v. Dean, 162 N. Y. 278, 56 N. E. 757. An adequate remedy at law means a full, complete, and perfect remedy. Assuming that this line deprives the plaintiffs of their legal rights, by an obstruction of the public highway at a point where the plaintiffs had and continue to have a right to cultivate and use the same jointly with the public, then the obstruction is a public nuisance—a continuous annoyance and interference with the plaintiffs' rights, and also with the rights of the public to occupy any portion of the public highway within the limits thereof—since the proper authorities still have the right to put a cinder path or other means of travel, for certain vehicles or for foot passage, along and upon this strip of land, while the plaintiffs have an absolute right, when that portion is unused by the public, to glean and garner any crop or crops which may be properly cultivated and raised upon the land in question, without interference on the part of and by the defendant corporations.

2. If the imposition of these poles and lines upon plaintiffs' land is a trespass upon the public highway and the rights of the legal owners, then the encroachment is unlawful and continuing, and in either event a remedy at law for the damages sustained could only operate as a partial remedy, to be in force from the time of the commencement of the action, or at most up to the time of the trial of that action; and so courts of equity may properly interfere with the nuisance or trespass, by a restraining order, to prevent a multiplicity of actions, which are both a private and a public burden and misfortune. Paige v. Schenectady R. Co., 77 App. Div. 571, 79 N. Y. Supp. 266; Campbell v. Seaman, 63 N. Y. 568, 20 Am. Rep. 567; Poughkeepsie Gas Co. v. Citizens' Gas. Co., 89 N. Y. 493; Uline v. N. Y. C. & H. R. R. Co., 101 N. Y. 98, 4 N. E. 536, 54 Am. Rep. 661; Wheelock v. Noonan, 108 N. Y. 179, 15 N. E. 67, 2 Am. St. Rep. 405; N. Y. C. & H. R. R. Co. v. City of Rochester, 127 N. Y. 591, 28 N. E. 416; Galway v. Metropolitan El. R. Co., 128 N. Y. 132, 28 N. E. 479, 13 L. R. A. 788; Matter of Burns, 155 N. Y. 23, 49 N. E. 246; Garvey v. Long Island R. Co., 159 N. Y. 323, 332, 54 N. E. 57, 70 Am. St. Rep. 550; Strobel v. Kerr Salt Co., 164 N. Y. 323, 58 N. E. 142, 51 L. R. A. 687, 79 Am. St. Rep. 643; Brewster v. Rogers Co., 169 N. Y. 73, 62 N. E. 164, 58 L. R. A. 495; Bly v. Edison El. Ill. Co., 172 N. Y. 1, 64 N. E. 745, 58 L. R. A. 500.

It is asserted by the defendant corporations that, under their answer, a multiplicity of suits can be avoided by an assessment of damages, as of proceedings to acquire the right to erect and continue the line in question by right of eminent domain. I do not think this position is well taken, since it now seems to be practically settled that the remedy by right of condemnation of the lands is a property right, to be tried not by a court of equity without the consent of the parties, but by a jury or commissioners impaneled or appointed by the court for the purpose of assessing the damages alleged to have been sustained. This is a complete remedy, made so by statute, and one which the court cannot usurp. Peck v. Schenectady R. Co., 67 App. Div. 359, 73 N. Y. Supp. 794, affirmed in 170 N. Y. 298, 63 N. E. 357. All of the decisions to the contrary seem to have been overruled, and this court ought not to be called upon to relieve parties of the consequences of going upon the lands of the plaintiffs in disregard of their rights, and in defiance of their protests made at the time. It was, in my judgment, a serious breach of the peace, and had the entry, as made upon the plaintiffs' title, been met by equally unlawful means, the consequences might have been very grave indeed; and it will not do to encourage the doctrine sought to be established by the defendants, or to hold that a man's rights may be invaded with the expectation that he will hold his peace, or that he will not resort himself to force, as he might do, to either cut down or destroy the poles and lines placed upon his premises, or beat and bruise the trespassers, ejecting them from his lands by force. I do not think the defendant corporations have shown themselves to be in a position to ask favor of the court, even if it had the power to grant the prayer for relief set forth in their answers.

For these reasons, among others, judgment must be rendered in favor of each plaintiff, with costs, and the injunction orders heretofore granted must be made permanent, leaving the defendants to their remedy under the statute to acquire their right by a proceeding to take the land, and compensate the plaintiffs in damages therefor. Since the strips of land had been heretofore broken up for highway purposes, and have since yielded no crop during the pendency of this action, the use thereof in compensation is only nominal, and I am inclined to assess those damages merely as nominal, since an adequate compensation can be given the plaintiffs under the other proceedings. Judgment in each case may be entered accordingly; costs to be taxed by the clerk if not stipulated by the respective attorneys.

Judgment accordingly.