Daniel Beckee, J.
This is a claim for $45,000 filed by the
City of New York against the State of New York with the Clerk of the Court of Claims on January 9, 1969.
The City of New York, hereinafter referred to as City, maintains that pursuant to subdivision 5 of section 340-b and subdivision 3.3 of section 349-c of the Highway Law, set forth below, $45,000 was due it for acquisition of the subject parcel by the State.
Former subdivision 5 of section 340-b of the Highway Law provided: “ Any property in the city of New York which is deemed by the superintendent of public works and the city of New York to be necessary for the construction, reconstruction and maintenance of interstate highways shall be acquired by the city of New York in the same manner as provided in section three hundred forty-nine-c of this chapter relating to the acquisition of property for the state arterial system in the city of New York, except that the city shall be reimbursed in full for the costs and expenses incurred by such acquisitions for interstate highways subsequent to the enactment of the federal aid highway act of nineteen hundred fifty-six, in the manner as provided in section three hundred forty-nine-c of this chapter relating to reimbursement of costs and expenses of acquisitions for the state arterial highways. Hpon the completion of construction by the state of a section or sections of interstate highways in the city of New York, the superintendent of public works may by official order transfer jurisdiction for maintenance of interstate highways or completed portions thereof - to the appropriate agency of the city of New York.”
Former subdivision 3.3 of section 349-c of the Highway Law provided the procedure and the method of determining any award for property taken pursuant to subdivision 5 of section 340-b of the Highway Law.
The parcel in question is located in the Borough of Richmond, City of New York and is referred to as either Damage Parcel 1721-P or Damage Parcel 22 depending upon the highway project being referred to and the maps involved. The 1957 *246 project for the Clove Lakes Expressways shows the parcel as 1721-P and the Hylan Boulevard project shows it to he Damage Parcel 22. The Clove Lakes project was authorized hy resolution of the Board of Estimate of the City in July 1957; Hylan Boulevard is the 1962 project.
The matter was brought on for trial on March 15, 1971 after entry of an order on January 6, 1970 signed by the Honorable Henry W. Lengyel, denying claimant City’s motion for summary judgment.
The City claims that the property in question was acquired by condemnation by it in 1962 at a cost of $45,000. The State denies this and maintains that the property in question was in fact condemned in 1958 for highway purposes and that it is not obliged to compensate the City pursuant to the Highway Law.
The City maintains, in the alternative, that section 3 of the General Municipal Law is applicable since the property in question was held for a substantially different purpose than that for which it was acquired by the State. Section 3 of the. General Municipal Law reads as follows: ‘ ‘ Where property of a municipal corporation, school district or district corporation is taken in the exercise of the power of eminent domain for a purpose substantially different from that for which it is held by such municipal corporation, school district or district corporation, just compensation to the municipal corporation * * * shall be made in the same manner, to the same extent and subject to the same limitations as though it were private property.”
The State maintains that this parcel had been previously condemned for highway purposes by the City by reason of the 1958 acquisition and that this section does not apply.
The City claims that the number designating this parcel in 1957 as 1721-P was erroneously included and that it secured an order correcting nunc pro tunc the 1 ‘ First Separate and Final Partial Decree” signed by the Honorable J. Vincent Keogh on June 10, 1959 substituting Parcel 1720-P for Parcel 1721-P. This order was an ex parte order.
The State maintains that this order is ex post facto and in effect does not alter or change the status of 1721-P as having been condemned in 1958 for highway purposes.
It is the City’s contention that since it held the subject property for sale and acquired it in an in rem foreclosure, that this constitutes evidence of its acting and holding the land in a proprietary capacity and therefore it is entitled to compensation for its taking in the same manner as a private citizen. This too is denied by the State.
*247 It should be pointed out that nothing appears on the record to indicate whether this claim has been assigned or submitted to any other court or tribunal for audit or determination. The court herein determines that the claim has not been so assigned or submitted.
The evidence at trial showed that the City acquired title to the subject property through an in rem foreclosure action for nonpayment of taxes in June, 1951. Thereafter, on June 29, 1951, a deed from the Treasurer of the City of New York, as grantor, was executed and delivered to the City of New York, as grantee. The deed was duly recorded on July 5, 1951 in the Richmond County Clerk’s office in Liber 1162 of Deeds, at page 369. Upon the trial of this matter the deed was introduced into evidence as claimant’s Exhibit 3. Claimant contends that this property was held by the City in its private and proprietary capacity, for sale, from 1951 until October 15, 1962. It is the City’s position that title to the subject parcel was divested from the City, which had held title to it in its proprietary capacity, by reason of the order granting the City’s application to condemn on October 15, 1962; that title then vested in the City in its governmental capacity for the purpose of further developing the Federally-aided interstate highway system. The order authorizing the City to condemn this property was filed October 15, 1962 in the office of the County Clerk of Richmond County; that on December 30, 1964 in a proceeding, “In the Matter of the Application of the City of New York, etc.” an order titled “ The Second and Last Separate and Partial Final Decree ” was signed by the Honorable A. David Benjamin and filed on December 31, 1964, awarding the sum of $45,000 to the City of New York from the City of New York for the subject parcel; that thereafter said award was paid by the Comptroller of the City of New York to the City of New York by check dated June 2, 1965, Warrant Number 142370, Ticket Number 820431; that thereafter on June 17, 1965 demand was made upon the State seeking reimbursement in the sum of $89,468.16 which represented the City’s cost in acquiring lands for the widening of Hylan Boulevard. This sum included the sum of $45,000 expended for the subject parcel; that the claim was audited by the State and reduced to the sum of $34,498.16 by eliminating the $45,000 paid for the subject parcel; the City made a subsequent demand for the $45,000 on November 15, 1968 by letter to the Comptroller of the State of New York, requesting payment; that at the same time the City demanded said $45,000 it demanded an additional $10,000 which it claimed *248 it had been deprived of by reason of a mathematical error; that no payment was received and this action was then commenced; that prior to trial, by stipulation entered into by both parties the claim for $10,000 was withdrawn.
The claimant then rested its case and the State moved to dismiss the claim on the ground that the claimant had failed to prove a prima facie case against the State. Decision on the State’s motion was reserved.
The State then proceeded with its case and introduced into evidence a notice of application to condemn, published October 16, 1957 in the City Record, which application was to acquire title in real property required for the Clove Lakes Expressway; that the subject property was listed and described in this notice and application to condemn bearing the date October 16, 1957. (See State’s Exhibit A). The State then offered into evidence the record of a meeting of the Board of Estimate of the City of New York held on July 3, 1957 and two resolutions adopted by the Board of Estimate adopting the rule maps and partial damage maps submitted by city construction co-ordinator for use of the Supreme Court proceeding to acquire title to real property for the Clove Lakes Expressway project; that by resolution dated July 3, 1957 the Board of Estimate directed that title, in fee simple absolute, to the properties included within the Clove Lakes Expressway, as well as those shown in outline upon a map and adjacent lands, was to vest in the City of New York on the date the order was filed, subject to approval of the acquisition by the State Department of Public Works. (See State’s Exhibit B.) The State then offered into evidence a certified copy of an order to condemn dated January 17, 1958 signed by the Honorable J. Vincent Keogh, said order allegedly containing metes and bounds descriptions of the properties to be condemned in general and the subject parcel in particular. (See State’s Exhibit C.) The State also introduced in evidence a decree signed by the Honorable J. Vincent Keogh and entitled “First Separate and Partial Final Decree ” which listed the compensation to be awarded for the various properties listed thereon, which list included the subject property under designation 1721-P. (See State’s Exhibit D.)
Thereafter the State called as its expert witness Sidney Richter. He testified that he was employed by the New York State Department of Transportation and had been so employed for 41 years; that he was now employed in the capacity of Senior Right of Way Agent for the Department of Transportation, Real Property Division; that he was familiar with and *249 had had occasion to look at maps regarding the Clove Lakes Expressway. He identified a map offered by the State as being the general layout map for the Clove Lakes Expressway. (See State’s Exhibit E.) He was then shown a map drawn on a heavy transparent sheet and identified it as being a transparency or “overlay” of State’s Exhibit E. Thereafter it was marked into evidence without objection. (See State’s Exhibit F.) He was then shown and identified a series of three sheets as representing the damage maps involving the takings for Clove Lakes Expressway. They consisted of a title page, a damage map showing parcels condemned and a tabular sheet. They were introduced into evidence without objection. (See State’s Exhibit G.) He was shown another series of three sheets, the first sheet was a title page, the second contained the damage parcel, the third a tabular sheet dated April 18, 1962. They were introduced into evidence without objection. (See State’s Exhibit H.) He then identified two sheets, Numbers 31 and 32, showing the area of construction of Hylan Boulevard overpass on Clove Lakes Expressway and a third sheet which was an overlay or transparency of the general area. This was then introduced into evidence without objection. (See State’s Exhibit I.) He identified an overlay or transparency of the damage map showing those damage parcels acquired in 1958. It was also introduced into evidence without objection. (See State’s Exhibit J.)
The witness Richter then demonstrated and located by use of these maps the subject parcel in the 1957-1958 proceeding and the same parcel in the 1962 acquisitions. Pursuant to the court’s instructions, Mr. Richter marked State’s Exhibit H with a red pencil to identify the subject parcel. He testified, by use of State’s Exhibits H and I, that Damage Parcel 22 was used in connection with the general development of Clove Lakes Expressway and in particular to be used in the widening of Hylan Boulevard. He further testified that by placing State’s Exhibit F over State’s Exhibit H, a large area the northerly boundary which is known as Felt Avenue and proceeds southerly to Steuben Street and Manorville Court and its westerly boundary being Grasmere Lake or Brady’s Pond was a part of the original condemnation proceeding for Clove Lakes Expressway in 1957 and that Damage Parcel 22 was included or was a part of that area shown on the 1957-1958 map as being acquired; that by placing State’s Exhibit J over State’s Exhibits G and H it was apparent that Damage Parcel 22, as designated in the 1962 taking, was part of Damage Parcel 1721-P of the 1958 *250 taking. This area was outlined in red for the court on State’s Exhibit J and was marked Damage Parcel 22. He testified that State’s Exhibit J showed the damage parcels taken in 1957 and they could be identified by the fact that they were given a specific number and a letter and then encircled. He further testified that parcels designated in 1957 as 1721-P and 1722-P corresponded to Damage Parcel 22 as designated in 1962; that he had taken the descriptions of Damage Parcel 22 of the 1962 acquisition and traced that description on a map; that he took the description of the 1957 takings and traced these upon a map; that the eastern boundary of Damage Parcel 22 corresponded with the eastern boundary of that area taken in 1958. He testified at pages 44 and 45 of the transcript as follows:
‘ ‘ Q. One more question. In land takings relative to highways, in highway land takings, is the word park ever used?
“ A. It’s used frequently.
“ Q. And what, if anything, does it mean relative to .highways?
“A. It’s an area which separates the highway — Well, it’s included in the general right-of-way of the highway excepting that where we use the word park frequently it’s meant to separate private property from the highway itself in order to discontinue access to the highway from the private property, and it’s a term generally used as a separater or a buffer strip I should say.
“ Q. What does it mean other than roadbed? I assume it does not mean roadbed. Does it mean anything else?
“ A. Well, as I say, as a buffer strip to separate property from the highway right-of-way generally speaking. You see, we’re talking about —
“ Q. Can you give us specifics as to things we have next to a roadbed, what might or might not be considered a park?
“ A. We have to visualize that a highway today isn’t necessarily all level. We have various levels of highways. Sometimes three and four levels of highways. Now, as you move vertically in elevation, you find you have to build slopes and walls, retaining walls and various other structures in addition to the highway itself and in so doing in order to support land which abuts the overall highway construction, you may have to develop these various buffer strips and it has been the practice in the State for many years, at least for the last twenty-five years or more that I’ve been connected with highway development, we have used the word park to designate a separation strip, a buffer.”
*251 On cross-examination the witness Richter testified that consultants who designed these expressways have designated buffer strips and indicate them as park; that these were provided for in order to preserve the right of access to the State and to prevent private property from abutting directly upon the highway or istructures located on or over the highway so as to destroy this right of access; that Parcel 1720-E was mentioned on State’s Exhibit D; that Parcel 1720-P was not mentioned on State’s Exhibit D; that Tax Lot Number 1 of Tax Lot 100 of Tax Block 3032 was located on the overlay of the actual damage map of 1957-1958 taking.
The City at this point offered into evidence an order signed by the Honorable Vito J. Titone, dated August 15, 1969. This order directed that the first separate and final decree of the Honorable J. Vincent Keogh, State’s Exhibit D in evidence, and the tabular abstract annexed thereto, be corrected nunc pro tunc, by substituting in the tabular abstract Damage Parcel 1720- P (a street), incorrectly omitted, for Damage Parcel 1721-P (City owned — land), and excluding 1721-P from that proceeding as directed by resolution of the Board of Estimate adopted July 3, 1957 (Cal. No. 117). This order was then introduced into evidence without objection.
On redirect examination Mr. Richter testified that the subject property is designated on State’s Exhibit Gr, the 1957 tabulation for the damage map, as Damage Parcel 1721-P, Plot 3032, Lot 1; that the area acquired was 145,209 square feet; that it was owned by the City of New York. He then marked the subject parcel in red with a capital “ S ” located in the margin. He further testified that the subject property was also designated on State’s Exhibit H, the tabulation sheet from the 1962 taking, as Damage Parcel 22, Tax Block 3032, Tax Lot 1; that the owner was the City of New York and the area taken was 100,103 square feet; that the area of remainder was 290,765 square feet; that the map designates title in the City vesting on January 17, 1958; that all the maps and overlays had the same scale.
On recross-examination Mr. Richter testified that the square-foot areas on the 1962 abstract could be reconciled with the 1958 abstract; that the designations placed upon the map were placed there by the City; that the subject parcel was part of 1721- P; that the area taken was 145,209 square feet; that this area is greater than that of Damage Parcel 22 which was 100,103 square feet; that he was not responsible for the tabulations on the map.
*252 At this point the State rested its case and the City offered no rebuttal evidence.
The State again moved to dismiss the City’s claim on the ground that the claimant had failed to prove a prima facie case against the State. Decision on the State’s motion was again reserved.
The claimant has the burden of proving all the allegations of his claim and in a condemnation matter he has the burden of proof in establishing the right to substantial compensation. (Heyert v. Orange & Rockland Utilities, 17 N Y 2d 352.)
It is not disputed that the City owned the parcel in question. It had received title to it in an in rem foreclosure in June, 1951. The question before this court is whether in 1962 the City held title to the property in its governmental or proprietary capacity. The State contends that by reason of the 1957-1958 condemnation action of various parcels, including the subject parcel, the City held this property in a governmental capacity and therefore is not entitled to compensation. The State further contends that section 3 of the Greneral Municipal Law is not applicable in this case.
The Board of Estimate by resolution on July 3, 1957 ordered acquisition by the City of certain lands, which included this subject parcel, for the Clove Lakes Expressway project. Title in the lands vested in the City on January 17, 1958. Attached to the order to condemn are descriptions of various parcels described in metes and bounds, including the subject parcel. The order subsequently signed by the Honorable J. Vincent Keogh was entitled a “First Separate and Partial Decree ” and it too contained the subject parcel.
The City contends that, while this parcel was included in these orders, the condemnation procedure as it related to this parcel was of no force or effect, since the Board of Estimate by reason of the July 3, 1957 resolution excluded all City-owned property. They contend that this language is included in resolutions to prevent situations like the one at bar from arising due to a typographical error. They claim that this was merely a typographical error.
The court does not agree with the City’s, interpretation of the language used in the resolution. It is reasonable to assume that this language was included in the resolution in order to prevent extraneous and unnecessary legal actions by the City. Since the City already owned the property in question it would be a meaningless act to condemn it in order to secure title to it. The court finds that this language was included in the resolution *253 to prevent the unnecessary act of condemning property already owned by the City.
The City contends that the error of including this parcel in the order and decree was corrected by a subsequent order filed nunc pro tunc. This order was signed by the Honorable Vito Titoíte upon the ex parte application of the City on August 15, 1969, some 10 years after the vesting of title to this property in the City by reason of its condemnation for highway purposes. To move for a correction of this 1959 order ex parte, at a time when the City had already filed a claim with the State and at a time when its claim was being contested, appears to be an afterthought. It was an obvious attempt to circumvent the situation which existed on the date of appropriation by the State in 1962.
While section B15-32.0 of the Administrative Code of the City of New York may provide for corrections of this nature to be made, it also requires that 10 days ’ notice be given to interested parties. The State, by reason of its having heretofore acquired title to the subject parcel from the City for construction of a highway, was an interested party and should have been given such notice. It was not.
It does not seem fair or reasonable to the court that a governmental unit could approve a project for highway purposes and then 10 years later attempt to correct an error it claims to have made, if such error in fact had been made, by ex parte motion. This is an error which could have been discovered with the slightest diligence. The City cannot claim that it did not have notice. It prepared or had prepared for its use the maps and plans which showed the subject area as an area to be condemned in the Clove Lakes Expressway project. Its counsel prepared all the legal papers. It prepared or had prepared the metes and bounds descriptions. Its Board of Estimate approved and accepted all the plans when presented to it. The final order was not signed until June of 1959. Surely it cannot be denied that there was both the time and opportunity to discover the claimed error. In this case the City would seem to be at the very least guilty of laches.
The court finds that this property was condemned in 1958 for highway purposes. It is clear that the acquisitions for the Hylan Boulevard widening in 1962 were also for a highway use. The record and exhibits establish that Damage Parcel 22 in the 1962 acquisition includes part of Damage Parcel 1721-P and all of 1722-P of the 1958 acquisition.
Land taken for highway purposes is taken for a public use. (Denihan Enterprises v. O’Dwyer, 302 N. Y. 451; Matter of *254 Burns, 155 N. Y. 23.) Lands held for highway purposes are held in a governmental capacity and not a proprietary capacity. (People v. Grant, 306 N. Y. 258; City of Albany v. State of New York, 21 A D 2d 224, affd. 15 N Y 2d 1024.) There can be no doubt that these lands were dedicated for highway purposes. Manifestly the City cannot assert that this land was held other than in a governmental capacity. (City of Albany v. State of New York, supra.) Since the parcel in question was acquired and held for highway purposes in 1958, the taking in 1962 is not compensable either under the common law or under section 3 of the General Municipal Law. (City of Albany v. State of New York, supra.)
The court finds that under the circumstances of the case at bar, notice of the order to correct the 1959 decree should have been served upon the State. By failing to do so the court finds that the City has failed to comply with section B15-32.0 of the Administrative Code of the City of New York and therefore the order obtained without the required notice is of no force or effect.
Once a parcel is acquired by a municipality for public use and held in its governmental capacity, it may be acquired by the State without compensation. (City of Albany v. State of New York, supra.)
Claimant cites County of Herkimer v. Village of Herkimer (279 N. Y. 560) as authority for its position that property acquired at a tax sale is held in its proprietary capacity. That case is distinguishable from the case at bar. In that case the court determined that the land acquired by the county was held in its proprietary capacity for purposes of articles 6 and 7 of the Tax Law and therefore was subject to village taxes.
In the Village of Canajoharie v. State of New York (8 A D 2d 656), the other case cited by claimant, the court held that the land in question was being used as a ball park and clearly being held by the village in its proprietary capacity. Therefore, the acquisition of this property by the State for highway uses was compensable. The facts in this case are quite different from the one at bar.
As has been shown, the subject property was acquired in 1951 by the City in a tax sale. Thereafter it was condemned by the City in 1958 for highway purposes. When acquired by the State in 1962 it was for the same purpose, highway use. Therefore the cases cited by the City are not in point.
Finally, the City contends that even if the land was taken in 1958 by condemnation, it is entitled to compensation for it. *255 They claim that the property was held from 1951 to 1957 in its proprietary capacity and damages should be computed by taking the 1962 price of $45,000 and adding or deducting the amount representing the increase or decrease in value from 1957 to 1962.
The court finds this argument to be without merit. The City’s claim in this proceeding was based upon the 1962 appropriation by the State. The issue before this court is whether that taking is compensable and the question of whether the 1958 taking is compensable has never been before this court. The City further contends that since it held this property in its proprietary capacity, it is entitled to compensation in the same manner as a private corporation. However, the court finds that the Statute of Limitations would bar recovery in this matter since no claim was filed within the two-year statutory period after the 1958 taking. (See Court of Claims Act, § 10, former subd. 1.)
In the case at bar the claimant has failed to sustain the burden of proof and has failed to establish a prima facie case against the State by a fair preponderance of the credible evidence.
The Attorney-General’s motion made at the end of claimant’s case and renewed at the close of the State’s case is now granted.
The claim is dismissed.